**Estifanos GIDAY, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 95–1503.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 31, 1997.

Decided May 16, 1997.

Mikre Michael Ayele, argued the cause, and filed the briefs, for petitioner.

Ethan B. Kanter, Attorney, U.S. Department of Justice, argued the cause, for respondent. With him on the brief, were Frank W. Hunger, Assistant Attorney General, and Michael P. Lindemann, Assistant Director, Washington, DC.

Before WALD, HENDERSON and TATEL, Circuit Judges.

TATEL, Circuit Judge:

Estifanos Giday petitions for review of the Board of Immigration Appeals's denial of his motion to reopen his deportation proceeding. Finding that Giday was given notice of his deportation hearing in accordance with the Immigration and Nationality Act, we deny the petition for review.

I

Section 242B of the Immigration and Nationality Act requires that prior to a deportation proceeding, the INS give written notice to a deportable alien specifying, among other things, the nature of the proceedings, the

charges being brought, and the statute the alien allegedly violated. 8 U.S.C. § 1252b(a)(1) (1994) (repealed in part effective April 1, 1997). Called an "order to show cause," this notice must be given in person to the alien, or, "if personal service is not practicable, such notice shall be given by certified mail to the alien or to the alien's counsel of record, if any . . . ." *Id.* Written notice must also be given, in the same fashion as the order to show cause, of the time and place of the deportation proceeding, *id.* § 1252b(a)(2), and of the consequences of failing to appear. *Id.* § 1252b(a)(2)(A)(ii). Those consequences are severe:

> Any alien who, after written notice . . . has been provided to the alien or the alien's counsel of record, does not attend a proceeding . . . shall be ordered deported . . . in absentia if the [INS] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is deportable.

*Id.* § 1252b(c)(1). Aliens ordered deported following *in absentia* hearings may reopen deportation proceedings by demonstrating that they did not receive proper notice of their hearing. *Id.* § 1252b(c)(3)(B).

A native of Ethiopia, Estifanos Giday came to the United States as a student in August 1989. He submitted a request for asylum to the INS in May 1991. On his asylum application, he gave as his address an apartment on Peabody Street in Washington, D.C. In February 1993, the INS issued a "Notice of Intent to Deny" asylum, and six months later, on August 20, it issued an order to show cause why Giday should not be deported. Under the Immigration and Nationality Act, aliens failing to maintain nonimmigrant status are deportable. 8 U.S.C. § 1251(a)(1)(C)(i) (1994). In the show-cause order, the INS alleged that Giday was an Ethiopian citizen, that he had entered the United States as a nonimmigrant student representing that he would attend the Lado International Institute, and that he had not attended the Lado Institute from January 1990 until the issuance of the show-cause order. The INS mailed the show-cause order by certified mail, return receipt requested, to Giday at his Peabody Street address.

Someone at that address signed for the letter and accepted it.

On September 12, the immigration court sent Giday a notice of hearing, informing him that his deportation hearing was scheduled for October 15. This notice was sent to Giday's Peabody Street address, also by certified mail, return receipt requested. Although the Postal Service twice attempted to deliver the notice to Giday, it was unsuccessful, and the certified mail receipt was returned to the court marked "unclaimed."

Giday did not appear at his deportation hearing. Finding that notice of the hearing had been sent to Giday's last known address and was therefore proper, the immigration judge conducted an *in absentia* hearing and found, based on Giday's 1991 asylum application, that Giday was a native of Ethiopia who had entered the U.S. in 1989 as a nonimmigrant student. Because the judge also found that the INS failed to prove that Giday had not remained in school, he declined to issue a deportation order and continued the hearing.

Immediately following the October 15 hearing, the INS sent Giday a second notice of hearing, again to his Peabody Street address by certified mail, return receipt requested, informing him that another deportation hearing would occur on January 7, 1994. Again, someone at his address signed for and accepted the letter.

Giday did not attend the January 1994 deportation hearing. Again finding that Giday had received proper notice, the immigration judge conducted another *in absentia* hearing at which the INS, responding to the immigration judge's earlier finding, produced evidence that Giday had in fact not been enrolled in the Lado Institute between January 1990 and August 1993. Finding the evidence that Giday had failed to maintain his nonimmigrant student status "clear, convincing, and unequivocal," the immigration judge issued a deportation order, sending it and his decision to Giday.

■ In early April 1995, Giday received a notice that he was to be deported to Ethiopia on May 8. Three days before his scheduled deportation, on May 5, he filed a motion to reopen, reconsider, and vacate the immigra-

tion judge's deportation order pursuant to 8 U.S.C. § 1252b(c)(3)(B), claiming that he had received neither the order to show cause nor the notice of his deportation hearing. Without a hearing, the immigration judge denied the motion to reopen, finding that Giday had been given notice and a reasonable opportunity to be present at his deportation hearing and that, contrary to 8 C.F.R. § 103.5(a)(2), he presented no affidavits or evidence showing that he had not received notice of the hearing.

Giday appealed to the Board of Immigration Appeals (BIA). The BIA dismissed his appeal without a hearing, "for the reasons set forth [in the immigration judge's decision]." Giday then filed this petition for review.

## II

■ Citing the Act's requirement that the Service personally serve a deportable alien unless "not practicable," Giday first claims that because the INS failed to serve him personally and did not prove that such service was "not practicable," he was not given proper notice of the August 1993 order to show cause or of his October 1993 and January 1994 deportation hearings. Although the Act does not define when personal service is "not practicable," the BIA interprets the phrase to require personal service only when the alien is present in court or otherwise readily accessible. *In re Grijalva,* —— I. & N. Dec. ——, slip op. at 8, 1995 WL 314388 (B.I.A. Int. Dec. No. 3246, April 28, 1995). Relying on that interpretation, the INS argues that because Giday was neither in immigration court nor otherwise readily accessible, personally serving him was "not practicable."

We review the BIA's interpretation of section 1252b with *Chevron* deference. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Fuentes–Argueta v. I.N.S.,* 101 F.3d 867, 870 (2d Cir.1996); *Tedeeva v. I.N.S.,* 88 F.3d 826, 827 (9th Cir. 1996). While personally serving one allegedly deportable alien might not be impracticable, the question from the BIA's perspective is whether personally serving *all* allegedly deportable aliens would be impracticable. Because streamlining and making the depor-

tation process more efficient was the driving purpose of the 1990 amendments to the Immigration Act, we think the INS's policy requiring personal service only for aliens present in the courtroom is quite reasonable, especially since the Immigration Act requires non-personal service by certified mail, return receipt requested. *See Tedeeva,* 88 F.3d at 827 (holding that BIA's interpretation of "not practicable" is "sensible construction of the statute, especially in light of other provisions of the [A]ct which indicate a legislative scheme that allows the INS efficiently to pursue hearings in absentia"); *Romero–Morales v. I.N.S.,* 25 F.3d 125, 127–28 (2d Cir. 1994) (noting that 1990 amendments to Immigration Act designed "in part to address the failure of aliens to appear at deportation hearings").

■ Giday next contends that, even if service by certified mail was an acceptable method of service under the Immigration Act, he was not properly served with either the order to show cause or the October 1993 notice of hearing because the INS failed to prove that those certified mail receipts had been signed by him or his agent. The Immigration Act, however, imposes on the alien the burden of "demonstrat[ing] that [he] did not receive notice," 8 U.S.C. § 1252b(c)(3), and the regulations require that he do so by coming forward with affidavits or other evidence. *See* 8 C.F.R. § 103.5(a)(2). Because Giday submitted no such evidence in support of his motion to reopen, instead merely alleging that he had not received proper notice, he failed to "demonstrate[ ]" lack of notice, as the statute requires.

■ Giday also argues that he received no notice of his October deportation hearing because the certified-mail notice of that hearing was returned "unclaimed" after the Postal Service made two attempts at delivery. The October deportation hearing, however, was continued by the immigration judge until January 7, 1994, and Giday has failed to show that he did not receive proper notice of that hearing. *See supra* pp. 233–34. Although the immigration judge made all but one of the required findings of deportability at the October 1993 hearing—that Giday was an

Ethiopian citizen and that he entered the United States in 1989 as a nonimmigrant student—these findings, independently documented by Giday's own asylum application, are unassailable. The only critical finding—that Giday was no longer a student—was made at the January hearing. We therefore reject this aspect of Giday's petition for review as well.

■ Finally, although Giday's brief contains a passing reference to an alleged violation of his constitutional due process rights, he provides no support for this argument, and we generally decline to address issues so sketchily briefed. *See Washington Legal Clinic for the Homeless v. Barry,* 107 F.3d 32, 39 (D.C.Cir.1997). His due process argument, in any event, is without merit. *See Fuentes–Argueta,* 101 F.3d at 872 (finding no due process violation in holding *in absentia* deportation hearings where notice of hearing returned unclaimed); *Patel v. I.N.S.,* 803 F.2d 804, 806–07 (5th Cir.1986) (stating that *in absentia* deportation hearing was "not *per se* violative of due process"; alien must show "substantial prejudice" to sustain due process challenge to proceeding).

## III

We need spend but little time on Giday's remaining arguments. Citing 8 C.F.R. § 292.5, requiring service of "any paper other than a warrant of arrest or a subpoena" upon "the representative of record, or the person himself if unrepresented," Giday argues that the INS failed to serve his attorney with notice of the order to show cause or of the deportation hearings. The statute and regulations specifically governing service of orders to show cause and notices of hearing, however, permit service on *either* the alien or his or her counsel. 8 U.S.C. § 1252(a)(1)–(2); 8 C.F.R. §§ 3.13 (requiring an order to show cause or a notice of hearing to be served "in person to the alien, or by certified mail to the alien or the alien's attorney"), 3.26 (allowing *in absentia* hearings to occur if Immigration Judge finds notice of the proceeding was provided "by written notice to the applicant or to the applicant's counsel of record").

■ Giday argues that the BIA erred in dismissing his appeal without a hearing and "for the reasons set forth [in the immigration judge's decision]." As the Government points out, however, this is not only common practice, but universally accepted by every other circuit that has squarely confronted the issue. *See Bing Feng Chen v. I.N.S.,* 87 F.3d 5, 8 (1st Cir.1996) (listing cases). We join those circuits. As the Eleventh Circuit put it: "[T]he Board need not write a lengthy opinion that merely repeats the immigration judge's reasons for denying the requested relief, but instead may state that it affirms the immigration judge's decision for the reasons set forth in the decision." *Prado–Gonzalez v. I.N.S.,* 75 F.3d 631, 632 (11th Cir. 1996).

■ Equally without merit is Giday's argument that the immigration judge's deportation order was not supported by substantial evidence. For his predicate findings of deportability, the immigration judge relied on Giday's application for asylum and on the Lado Institute letter stating that Giday was not enrolled there from 1990 through 1993. Although the asylum application was not initially included in the administrative record, the INS has since moved to include it in the record on appeal pursuant to Circuit Rule 30(e), which allows a party, in the court's discretion, to supplement the administrative record with "anything material to the ... petition." D.C.Cir. R. 30(e). Giday did not file a timely opposition to the Service's motion to supplement, and in a separate order issued this date, we grant the motion. Reviewing the record as now supplemented with Giday's asylum application, we conclude that the deportation order is supported by substantial evidence.

The petition for review is denied.

*So ordered.*