**Prek LEKAJ, Petitioner–Appellant,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellee.**

**No. 02–3855.**

United States Court of Appeals, Sixth Circuit.

Jan. 8, 2004.

---

Carl M. Weideman, III, Weideman & Weideman, Grosse Pointe Woods, MI, for Petitioner.

Papu Sandhu, Emily A. Radford, U.S. Department of Justice, Washington, DC, for Respondent.

Before COLE and CLAY, Circuit Judges; and QUIST, District Judge.*

## OPINION

COLE, Circuit Judge.

Petitioner Prek Lekaj ("Lekaj") seeks review of a final order of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") order denying his applications for asylum and withholding of removal. The BIA affirmed and adopted the decision of the IJ. Lekaj also appeals the BIA's decision denying his motion to remand for reconsideration under the United Nations Convention Against Torture ("the Convention"). For the reasons below, we **DENY** Lekaj's petition for review of the BIA's decisions affirming the IJ's denial of Lekaj's applications for asylum and withholding of removal, and denying Lekaj's motion to re-

---

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

mand his applications for reconsideration under the Convention.

## I. BACKGROUND

Lekaj, a citizen of Albania, came to the United States on or about October 16, 1993 as a visitor for pleasure with authorization to remain until April 15, 1995. On May 24, 1995, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against Lekaj alleging deportability under 8 U.S.C. § 1251(a)(1)(C)(i) for remaining in the United States longer than authorized. Lekaj conceded his deportability before the INS but requested relief in the form of asylum and withholding of deportation.

Lekaj claimed that if he were removed and returned to Albania, he would be persecuted on the basis of his religious beliefs. He stated that he belonged to an informal association of Catholics who convened regularly for the purpose of demanding greater religious freedoms from the Albanian government. Lekaj claimed that he and other Catholics were harassed by Muslim youths because they attended Catholic churches and that the police failed to protect them. Lekaj also stated that he took part in demonstrations against the Albanian government for its abuse of Catholics' human rights, and that as a result of these activities, he was arrested and detained for five days in 1992.

On December 10, 1998, the IJ rendered an oral decision denying Lekaj's applications for asylum and withholding of removal. The IJ held that Lekaj had "failed to establish that he [had] been the victim of either past persecution or [that he had] a well-founded fear of present or future persecution." See 8 U.S.C. §§ 1101(a)(42). See also INS v. Elias–Zacarias, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

On July 2, 2002, the BIA unanimously affirmed the IJ's decision. Further, the BIA denied Lekaj's request to remand the proceedings to the IJ because he had failed to establish a *prima facie* case for withholding of removal or deferral of removal under the Convention. The BIA explained that an applicant for protection under the Convention must establish that it is more likely than not that he would be tortured if returned to the proposed country of removal, and that Lekaj had failed to establish any evidence of torture in Albania. Lekaj now appeals the BIA's decision.

## II. ANALYSIS

### A. BIA s Adoption of the IJ's Opinion

■ As a preliminary matter, Lekaj contends that he was denied a fair review by virtue of the BIA's summary adoption of the IJ's reasoning. This Court, in a recent opinion, denied a petitioner's claim that the BIA's summary-affirmance-without-opinion procedure, which is less rigorous than the BIA's adoption of an IJ's opinion, constituted a *per se* violation of a petitioner's right to a fair review. There, we held that a challenge to the summary affirmance procedure "cannot stand when the only evidence that the summary affirmance procedure causes the BIA to disregard its review responsibilities is the nature of the procedure itself[.]" *Denko v. INS*, 351 F.3d 717, 728 (6th Cir.2003). Lekaj has presented this Court with no evidence that the BIA did not conduct a fair review, beyond simply pointing to its adoption of the IJ's opinion. Moreover, no circuit that has addressed this issue has held that a petitioner was denied a fair review by the BIA solely because of its adoption of the reasoning of the IJ. *See, e.g., Larita–Martinez v. INS*, 220 F.3d 1092, 1097 (9th Cir.2000) ("[T]hat the Board affirmed the IJ's decision based upon and for the reasons set forth therein, does not mean that the Board blindly rub-

ber stamped the IJ's decision[.]"); *Giday v. INS,* 113 F.3d 230, 234 (D.C.Cir.1997) (" 'The Board need not write a lengthy opinion that merely repeats the immigration judge's reasons for denying the requested relief, but instead may state that it affirms the immigration judge's decision for the reasons set forth in the decision.' ") (quoting *Prado–Gonzalez v. INS,* 75 F.3d 631, 632 (11th Cir.1996)). Accordingly, Lekaj was not denied a fair review merely because the BIA adopted the reasoning of the IJ in affirming its denial of his application for asylum and withholding of removal.

## B. Application for Asylum and Withholding of Removal

### 1. Standard of Review

This Court reviews the BIA's decision affirming the denial of Lekaj's application for asylum under the substantial evidence standard. Reversal is appropriate only if a reasonable factfinder would be compelled to conclude that fear of persecution existed. *See Elias–Zacarias,* 502 U.S. at 481; *Koliada v. INS,* 259 F.3d 482, 488 (6th Cir.2001); *Mikhailevitch v. INS,* 146 F.3d 384, 388 (6th Cir.1998); *Klawitter v. INS,* 970 F.2d 149, 151 (6th Cir.1992).

### 2. The BIA's Affirmance of the IJ is supported by substantial evidence.

■ Lekaj has failed to establish that he was persecuted in the past or that he had a well-founded fear of future persecution on account of race, religion, nationality, membership in a political social group, or political opinion. *Elias–Zacarias,* 502 U.S. at 481. First, Lekaj has not estab-

lished that he was a victim of past persecution. Lekaj claims to have been a member of the Democratic Christian Party, a group of Catholics that advanced the cause of religious freedom and toleration in Albania, from 1991 until his departure to the United States. As a member of this organization, Lekaj claims that he participated in several demonstrations for religious freedom. At his hearing before the IJ, Lekaj testified that during one of these demonstrations—in March of 1992—he was arrested. However, the circumstances of his arrest, and whether the arrest was directly related to the demonstration, are unclear. When asked why he had been arrested, Lekaj stated that it was because he pushed a police officer to the ground after the officer attempted to confiscate his camera.[1] He was detained for five days. Lekaj concedes that he never complained of ill treatment while in prison. During his hearing, Lekaj testified that he was given food and drink during that period, and that nothing happened to him while in detention. Lekaj was not arrested again.

Lekaj also testified that his attempts to attend church were hindered by state police. Lekaj further stated that police often stopped traffic in front of the church and threatened attendees with prison sentences for attending church. He stated, however, that he was never arrested or imprisoned for attending church. In fact, Lekaj testified that he attended church every Sunday while in Albania, despite these hindrances. As the IJ stated in denying Lekaj's petition for asylum, Lekaj was, at most, harassed for attending church. This Circuit, and our sister circuits, have held that "harassment, alone

---

1. According to his testimony, Lekaj was taking pictures inside a museum, a practice he says was not prohibited. Nonetheless, this arrest does not seem to be related to the demonstration in which Lekaj is alleged to have participated. In fact, the IJ concluded that the arrest resulted solely from Lekaj's assault of a police officer, the punishment of which is well within the rightful authority of the state. (JA at 10).

... does not rise to the level of 'persecution' under the [INA]." *Mikhailevitch* 146 F.3d at 390; *Bradvica v. INS*, 128 F.3d 1009, 1012 (7th Cir.1997); *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995). Accordingly, Lekaj has failed to establish past persecution.

Similarly, Lekaj has failed to demonstrate a well-founded fear of persecution within the meaning of the INA. In order to demonstrate eligibility for asylum on the basis of a well-founded fear of persecution under 8 C.F.R. 208.13(b)(2), an applicant must establish: (1) a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) an inability or unwillingness to return to that country because of such fear. *Mikhailevitch*, 146 F.3d at 389. An applicant's fear must be both subjectively genuine and objectively reasonable. *Perkovic v. INS*, 33 F.3d 615, 620–21 (6th Cir.1994).

■ Lekaj failed to establish that he had an actual fear of returning to Albania. In his testimony it was established that Lekaj, despite asserting the alleged fear of persecution as late as 1992, applied for and received a passport from the Albanian government in April of 1993. It was also established that despite his alleged fear, he waited for over a year before finally leaving Albania for the United States. Lekaj testified that when he arrived in the United States in 1993 he intended to return to Albania, but that circumstances changed such that he feared returning. When asked to describe the changes that led to his decision not to return to Albania, he stated, "The crisis in the government; the crisis in economy; the destruction and the burning of the factories and plants ... the fact that the people were armed." (JA

at 86). None of these statements substantiates a claim that Lekaj had a well-founded fear of persecution on the basis of his religion.

Lekaj's asserted fear is further undermined by his testimony regarding life in Albania. When asked about his sister, who is a Christian and continues to live in Albania, Lekaj said that she still attends church there. When asked if she had trouble attending church, he answered, "No, now there's no problem to go to church." (JA at 87). Lekaj has failed to demonstrate that he actually fears that he will be persecuted upon returning to Albania.

Lekaj has also failed to produce any evidence "establishing an 'objective situation' under which his fear can be deemed reasonable." *Mikhailevitch*, 146 F.3d at 389. The 1993 Country Report on Albania does not substantiate Lekaj's claim that there was persecution of Christians in Albania during 1991 and 1992. The Report stated that in March 1993, the parliament had "pass[ed] a human rights law which incorporates the basic provisions of the first articles of the draft constitution providing for the freedom of speech, press ... association and religion." The Report goes on to say that "freedom of religion has been established both in theory and in practice." It also stated: "Foreign clergy, including Muslim clerics and Christian missionaries, freely carry out religious activities." These statements were echoed in the 1997 Report on Albania, which stated: "The Law on Fundamental Human Rights and Freedoms provides that freedom of thought, conscience, and religion may not be violated[.] The Government respects these provisions in practice." The Report continued: "There are over 2,500 missionaries, representing Christian or Ba'hai organizations. No religious missionaries have suffered any acts of violence

or been arrested because they are missionaries."

Based upon the record, it must be concluded that to the extent that Lekaj suffered any fear, such fear was neither subjectively genuine nor objectively reasonable. The record before the IJ, including Lekaj's testimony and the Country Reports, confirms that the BIA's decision affirming the IJ was supported by the evidence.

In order to qualify for withholding of removal pursuant to Section 243(h) of the INA, 8 U.S.C. § 1253(h), an otherwise deportable alien must demonstrate that it is more likely than not that he would be subject to persecution. *See INS v. Stevic,* 467 U.S. 407, 425, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). An applicant seeking the withholding of deportation must meet a higher burden than one for asylum. *See Stevic,* 467 U.S. at 425; *Mikhailevitch,* 146 F.3d at 391 ("An applicant seeking withholding of deportation faces a more stringent burden of proof than one for asylum.") (citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 431–32, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). It follows that because Lekaj has failed to establish a well-founded fear of persecution for purposes of obtaining asylum, he cannot meet the higher burden that future persecution is "more likely than not."

## C. Motion for Remand for Reconsideration under the Convention

### 1. Standard of Review

An applicant for withholding of removal pursuant to the Convention bears the burden of proving "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *See* 8 C.F.R. § 208.16(c)(2) (2000). "In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of remov-

al, all evidence relevant to the possibility of future torture shall be considered, including ... other relevant information regarding conditions in the country of removal." 8 C.F.R. § 208.16(c)(3) (2000). This Court reviews the BIA's denial of a motion to reopen for abuse of discretion, requiring that the decision is conclusive "unless manifestly contrary to law." *Ali v. Reno,* 237 F.3d 591, 596 (6th Cir.2001).

### 2. Lekaj is not entitled to a remand

Lekaj contends that he is entitled to have his application for asylum reopened to be considered under the Convention. In his brief, he refers the Court to two cases decided by the Seventh and the Ninth Circuits that, he contends, support reversing the BIA's decision. These cases are, however, inapposite. Although Lekaj fails to make any argument in his brief regarding either case, it is presumed that he takes them to stand for the proposition that an alien seeking asylum under the Convention need not make a *prima facie* case before being entitled to have his case reopened.

*Kamalthas v. INS,* 251 F.3d 1279 (9th Cir.2001), involved a Tamil males's application for asylum alleging torture in his native Sri Lanka. There, the petitioner challenged the BIA's decision denying his motion to reopen for consideration under the Convention. The court vacated the BIA's denial on the ground that it had "conflated the standards for granting relief in asylum and Convention cases." *Id.* at 1280. The BIA had rejected the motion because Kamalthas had only submitted a copy of his previous asylum application, with no additional information. Kamalthas did not challenge whether a *prima facie* case was required to reopen for consideration under the Convention. Rather he challenged the BIA's determination that "his failure to submit additional facts

to rebut the [BIA's] earlier adverse credibility determination precluded the establishment of a prima facie case for relief under the [Convention]." *Id.* at 1282. There, the court noted that the Country Reports, which documented the practice of torture against Tamil males in Sri Lanka, corroborated Kamalthas's testimony. The court's decision, therefore, seems to suggest that a Country Report, which corroborates an alien's testimony, without anything else, may be sufficient to establish a *prima facie* case, even after an adverse credibility determination has been made.

Likewise, *Mansour v. INS,* 230 F.3d 902 (7th Cir.2000), upon which Lekaj's relies, does not hold that an applicant need not make a *prima facie* case. In circumstances almost identical to those in *Kamalthas,* the court held that the BIA had not paid sufficient attention to Mansour's claims. It noted that the BIA had used the phrase "Syrian Christians," despite the fact that Mansour applied as an "Assyrian Christian," and that the BIA had failed to take note of the Country Report "that suggest[ed] that the Iraqi government [had] engaged in abuses against the Assyrian Christians, a minority, who are living in Iraq." *Id.* at 907. It stated, "[The Country Report] may well be an indication of gross, flagrant, or mass violations of human rights in Iraq; however, the BIA never addressed this evidence." *Id.* at 907–08.

There is no indication in the record that the BIA failed to consider any evidence that might have corroborated Lekaj's claims. The Country Reports clearly do not support Lekaj's claims of religious persecution in Albania, and he presented no additional evidence that would have led the BIA to find that he had established a *prima facie* case for remand for consideration under the Convention.

## CONCLUSION

For the foregoing reasons, we **DENY** Lekaj's petition for review of the BIA's decisions affirming the IJ's denial of Lekaj's applications for asylum and withholding of removal, and denying Lekaj's motion to remand his applications for reconsideration under the Convention.