RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0031p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

GUALTERIO LAZARO SANTOS-SANTOS,

*Petitioner*,

*v.*

No. 18-3515

WILLIAM P. BARR, Attorney General,

*Respondent*.

───────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 076 973 587.

Decided and Filed:  February 28, 2019

Before:  SILER, COOK, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  David W. Williams, Santa Ana, California, for Petitioner.  Jeffery R. Leist, Anthony C. Payne, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

## OPINION

───────────────

SILER, Circuit Judge.  Gualterio Lazaro Santos-Santos petitions for review of a 2018 order by the Board of Immigration Appeals ("Board") that affirmed an immigration judge's ("IJ") decision denying the motion to reopen an *in absentia* removal order entered against Santos-Santos in 2000.  Santos-Santos argues that the Notice to Appear ("NTA")[1] served on him

─────────────

[1]Unless otherwise indicated, we use the term Notice to Appear and NTA referred to in 8 C.F.R. §§ 1003.13–15.

did not include the "date, time, and place" at which he was required to appear, and the IJ therefore had no jurisdiction to enter a removal order. We DENY the petition.

I.

Santos-Santos, a citizen of Mexico, entered the United States without inspection near Nogales, Arizona, in 1999. On March 6, 2000, he and his wife attempted to enter Canada from Port Huron, Michigan, but were denied admission by Canadian immigration authorities and directed back to Port Huron. They were referred to secondary inspection and questioned as to their citizenship and status in the United States. Both admitted to being citizens of Mexico and entering the United States illegally. Santos-Santos said he illegally resided in Chicago, Illinois. The Immigration and Naturalization Service ("INS") personally served Santos-Santos with an NTA, charging him with inadmissibility under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i),[2] and ordering him to appear for a hearing in Detroit. The NTA listed his address as "2444 South Troy, Chicago, Illinois, 60623," and indicated that the date and time of the hearing was "to be determined." On May 19, a "Certificate of Service of Charging Document with the Immigration Court" was issued to Santos-Santos at the same address, informing him that the NTA had been sent to the Detroit immigration court. On May 24, the Detroit immigration court issued a Notice of Hearing ordering him to appear on October 20, 2000; it was mailed to Santos-Santos at "2444 South Troy, Chicago, IL 60623." Santos-Santos failed to appear at his October 20, 2000, hearing and was ordered removed *in absentia*. The order was mailed to the same address. Santos-Santos claims he did not receive the *in absentia* order and only learned of it when he was involved with immigration proceedings in Los Angeles.

In 2018, Santos-Santos, through counsel, filed a motion to reopen the *in absentia* order with the immigration court. Santos-Santos argued that he never received notice of his hearing date, and that "[t]he record is silent as to whether the Service even attempted to provide Respondent with a Notice of Hearing." He further contended that, because the NTA did not include the date and time of his hearing, it was facially defective, rendering the proceedings void *ab initio*. In an attached declaration, Santos-Santos said that while he received the NTA that

---

[2]Immigration and Nationality Act, Pub. L. No. 89-236, 79 Stat. 911, 917–18 (Oct. 3, 1965) (codified as amended at 8 U.S.C. § 1182(a)(6)(A)(i)).

stated the date and time of the hearing were to be determined, he did not receive any other notices.

The Department of Homeland Security ("DHS")**³** filed a response in opposition to Santos-Santos's motion. It noted that a Notice of Hearing was sent on May 24, 2000 instructing Santos-Santos to appear on October 20, 2000. DHS contended, inter alia, that the presumption of regularity established that the notice was properly delivered and Santos-Santos had not adequately rebutted that presumption. DHS further argued that Santos-Santos failed to cite any authority supporting his argument that a lack of date and time of the hearing on the NTA meant that the IJ did not properly exercise jurisdiction over his case.

The IJ denied the motion to reopen for "the reasons stated in the opposition to the motion." Santos-Santos petitioned the Board, reiterating his claim that he never received notice of the hearing and the IJ erred in exercising jurisdiction. The Board dismissed the appeal on May 2, 2018, finding that there was no evidence that either the NTA or the *in absentia* order was returned to the immigration court. Further, the Board noted that Santos-Santos did not (1) argue that the notice was addressed incorrectly, (2) claim that he was having mail delivery problems at that address, (3) initiate proceedings to obtain relief, or (4) report what efforts he took to determine the status of his proceedings in the interim seventeen years before his motion to reopen. The Board also determined that an NTA need not include the time and date of a removal hearing, and that the statutory notice requirements may be satisfied when the information is provided in a subsequent notice. Finally, the Board concluded that Santos-Santos had not shown that sua sponte reopening of his proceedings was warranted. This petition for review followed.

## II.

"A motion to reopen is a form of procedural relief that asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." *Dada v. Mukasey*, 554 U.S. 1, 12 (2008) (internal quotation marks omitted). We review the Board's denial of such a motion for abuse of discretion. *Camaj v. Holder*, 625 F.3d 988, 991

---

**³**On March 1, 2003, the INS ceased to exist and its functions were absorbed by DHS. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002).

(6th Cir. 2010). The Board abuses its discretion only when its determination was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (quoting *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006)). When the Board provides its own reasoning for affirming the denial of relief, we review only the Board's decision, but to the extent that the Board adopts the reasoning of the IJ, we also review that decision. *Thompson v. Lynch*, 788 F.3d 638, 642 (6th Cir. 2015) (citation omitted); *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009). Our review of an *in absentia* order is limited to: (1) the validity of the notice provided to the alien, (2) the reasons for the alien's not attending the proceedings, and (3) whether the alien is removable. 8 U.S.C. § 1229a(b)(5)(D); *Ba v. Holder*, 561 F.3d 604, 606 (6th Cir. 2009) (citation omitted).

### III.

Relying on *Pereira v Sessions*, 138 S. Ct. 2105 (2018), Santos-Santos argues that the NTA was facially deficient due to the lack of a time and place of the hearing. This deficiency, Santos-Santos contends, renders the removal proceedings void *ab initio* because the IJ was never properly vested with jurisdiction.

*Pereira* is distinguishable: that case (1) dealt with whether the narrow "stop-time" rule can be triggered by an NTA omitting the time and place of the initial hearing, and (2) addressed two statutory provisions distinct from the regulations at issue here. 138 S. Ct. at 2110, 2113–16; *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314 (6th Cir. 2018). Contrary to Santos-Santos's argument regarding jurisdiction, we have recently held that "jurisdiction vests with the immigration court where . . . the mandatory information about the time of the hearing, *see* 8 U.S.C. § 1229(a), is provided in a Notice of Hearing issued after the NTA." *Hernandez-Perez*, 911 F.3d at 314–15. As the Notice of Hearing containing the requisite information was sent to Santos-Santos—notwithstanding Santos-Santos's claim that he did not receive the notice, addressed below—the IJ properly exercised jurisdiction.

Alternatively, we find that the INA contains language regarding "proceedings for deciding the inadmissibility or deportability of an alien[,]" but does not address jurisdictional

prerequisites. *See* 8 U.S.C. § 1229a. Rather, the INA allows the Attorney General to promulgate regulations to govern removal hearings, which include provisions for when and how jurisdiction vests with the IJ. 8 U.S.C. §§ 1103(g)(2), 1229a(a); 8 C.F.R. §§ 1003.13, 1003.14(a). These regulations provide that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the [INS]." 8 C.F.R. § 1003.14. For proceedings like Santos-Santos's, which were initiated after April 1, 1997, the "charging document" includes "a Notice to Appear,[4] a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13. The regulation does not cross-reference 8 U.S.C. § 1229(a)(1)'s definition of a written "notice to appear." Instead, the regulations stipulate that an NTA, for purposes of vesting jurisdiction, must contain: (1) the nature of the proceedings against the alien; (2) the legal authority under which the proceedings are conducted; (3) the acts or conduct alleged to be in violation of law; (4) the charges against the alien and the statutory provisions alleged to have been violated; (5) notice that the alien may be represented, at no cost to the government, by counsel or other authorized representative; (6) the address of the Immigration Court where the INS will file the show cause order and NTA; (7) a statement that the alien must advise the Immigration Court of his or her current address and telephone number, and a statement that failure to do so may result in an *in absentia* hearing under 8 C.F.R. § 1003.26. 8 C.F.R. § 1003.15(b). An NTA for removal proceedings must also include the alien's name and any known aliases, the alien's address, the alien's registration number, the alien's alleged nationality and citizenship, and the language that the alien understands. 8 C.F.R. § 1003.15(c). Failure to include this information, however, "shall not be construed as affording the alien any substantive or procedural rights." 8 C.F.R. § 1003.15(c). No references to the time and place of the hearing

---

[4]It bears mentioning that the "Notice to Appear" in 8 C.F.R. §§ 1003.13–14 is different from the "Notice to Appear" in 8 U.S.C. § 1229(a)(1). Unlike a Notice to appear in 8 U.S.C. § 1229(a)(G)(i), which requires that the "time and place at which the proceedings will be held" be included in the notice, the Notice to Appear under 8 C.F.R. § 1003.15 does not have this requirement. Although the contents of the two documents might be different, this does not mean that the regulation contradicts the statute. Nothing in 8 U.S.C. § 1229 or elsewhere in the code requires the Notice to Appear specified in § 1229(a)(1) to commence immigration proceedings and vest jurisdiction with the IJ. Even though one might question the agency's wisdom in referring to the document in 8 C.F.R. §§ 1003.13–15 as a Notice to Appear in an effort to avoid conflating the two types of Notices to Appear, its regulations are consistent with the statute. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 543 (1978).

are required to vest jurisdiction under the regulation.  The NTA served on Santos-Santos and filed with the immigration court contained all of the requisite information and satisfies the regulation's definition of a "notice to appear."  *Karingithi v. Whitaker*, 913 F.3d 1158, 1159-62 (9th Cir. 2019) ("The regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction.  A notice to appear need not include time and date information to satisfy this standard.  [The petitioner's] notice to appear met the regulatory requirements and therefore vested jurisdiction in the IJ.").

Considered under either argument, Santos-Santos's position regarding jurisdiction is thus unpersuasive.

IV.

In the alternative, the United States argues that Santos-Santos has failed to meet his burden of proving that he did not receive proper notice of his October 20, 2000 hearing, rendering the denial of the motion to reopen proper.

Santos-Santos bears the burden of demonstrating that he did not receive proper notice of the hearing.  8 U.S.C. § 1229a(b)(5)(C); *Scorteanu v. INS*, 339 F.3d 407, 411 (6th Cir. 2003) ("[I]n seeking recision of an *in absentia* deportation order, the burden rests on the movant to demonstrate . . . improper notice . . . .").  We review de novo the adequacy of notice, but "accord a great deal of deference to the Attorney General's and the [Board]'s permissible constructions of the statute which they administer."  *Soumah v. Holder*, 403 F. App'x 999, 1001 (6th Cir. 2010) (citations omitted); *Mota-Roman v. Holder*, 331 F. App'x 379, 382 (6th Cir. 2009) (citations omitted).

As an initial matter, Santos-Santos has forfeited any challenge to the Board's determination that he failed to overcome the presumption of delivery of the notice of his hearing. *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004) (holding that "[i]t is proper for an appellate court to consider waived all issues not raised in an appellant's briefs").  The only mention of the notice in his briefing are: (1) a statement that he "did not receive notice of hearing[,]"; (2) a heading under "Issues Presented" noting "Whether Appellant Received Notice of Hearing" without further development; and (3) the unsupported claim that "the file provided

by USCIS clearly establishes that the government took no steps to notify Respondent of his hearing."

Even if we proceed to consider the merits, we still conclude that the Board did not abuse its discretion in determining Santos-Santos failed to meet his burden to prove he did not receive proper notice. As explained below, notice may be given pursuant to either paragraph (1) or paragraph (2) of section 1229(a). Although Santos-Santos may have met his burden in showing that he did not receive a notice in accordance with paragraph (1), he did not meet his burden to show lack of notice in accordance with paragraph (2).

Under the immigration statute, an alien must be provided written notice of his or her removal proceeding. *See* 8 U.S.C. § 1229(a)(1). The statute also authorizes IJs to issue orders of removal *in absentia* if the alien fails to appear at the removal proceedings. *Id.* § 1229a(b)(5)(A). An order of removal *in absentia*, however, can be issued only when "[a]ny alien, who *after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record*, does not attend a proceeding under this section . . . if [DHS] establishes by clear, unequivocal, and convincing evidence that the notice was so provided and that the alien is removable." *Id.* (emphasis added). The statute also allows aliens to challenge their orders of removal *in absentia*. *Id.* § 1229a(b)(5)(C)(ii). Orders of removal *in absentia* may be rescinded only "upon a motion to reopen filed at any time if *the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title*." *Id.* (emphasis added). Thus, for proceedings involving an *in absentia* removal order, a prerequisite for a properly issued order is that there be a sufficient showing that the alien received notice under either paragraph (1) or paragraph (2) of section 1229(a). DHS bears the burden of proving by clear and convincing evidence that notice was given in order to obtain an *in absentia* removal order. But once the order has been issued, the alien has the burden to prove the absence of notice in order to set that order aside.

As noted in § 1229(a), there are two different types of written notices. The written notice in paragraph (1) of section 1229(a) (i.e., the "Notice to Appear") mandates that the notice "contain certain required elements, including the nature of the proceedings, the conduct alleged to be in violation of the law, and the date, time, and location of the proceedings." *Ba*, 561 F.3d

at 606 (citation and internal quotation marks omitted). A written notice to the alien or his counsel in accordance with paragraph (2) of section 1229(a), though similar to the notice described in paragraph (1), must specify "the new time or place of the proceedings, and the consequences under section 1229a(b)(5) of this title of failing, except under exceptional circumstances, to attend such proceedings." 8 U.S.C. § 1229(a)(2)(A)(i)–(ii).

Santos-Santos, an alien who seeks to rescind the *in absentia* removal order, bears the burden to prove that there was no notice under either paragraph (1) or paragraph (2) of section 1229(a). Santos-Santos met his burden to show that he did not receive notice in accordance with paragraph (1). Santos-Santos's notice to appear did not satisfy the requirements of paragraph (1) because it did not include the date and time of the removal proceeding. But Santos-Santos must also show that he did not receive notice in accordance with paragraph (2) of section 1229(a). 8 U.S.C. § 1229a(b)(5)(C)(ii). Because Santos-Santos's Notice of Hearing in Removal Proceedings meets the requirements of paragraph (2), Santos-Santos must rebut the presumption by showing that he did not actually receive this notice, as the notice was purportedly mailed to his listed address. *See Scorteanu*, 339 F.3d at 411. Santos-Santos fails to overcome this presumption.

> We have previously considered the following non-exhaustive list of potential evidence:
>
> (1) the respondent's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received; (3) the respondent's actions upon learning of the in absentia order, and whether due diligence was exercised in seeking to redress the situation; (4) any prior affirmative application for relief, indicating that the respondent had an incentive to appear; (5) any prior application for relief filed with the Immigration Court or any prima facie evidence in the record or the respondent's motion of statutory eligibility for relief, indicating that the respondent had an incentive to appear; (6) the respondent's previous attendance at Immigration Court hearings, if applicable; and (7) any other circumstances or evidence indicating possible nonreceipt of notice.

*Thompson*, 788 F.3d at 643 (citation omitted). Santos-Santos's motion to reopen and affidavit stated that he did not receive the NTA, but provided no other evidence supporting his claim of nonreceipt. Santos-Santos presented no evidence that he was not removable as charged or that he was eligible for or had pending applications for relief. Further, he has presented no evidence

that he had difficulties receiving mail at that address of record or that any of the notices and order were returned as undeliverable. *See Ly v. Holder*, 327 F. App'x 616, 622–23 (6th Cir. 2009) (finding Petitioner failed to rebut presumption that he received notice to appear when he did not present evidence that mail was returned as undeliverable to the listed address). We therefore conclude that Santos-Santos failed to rebut the presumption of delivery and affirm the denial of the motion to reopen.

PETITION FOR REVIEW DENIED.