NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0338n.06

No. 18-3891

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 05, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SARA MARIA AGUILAR-GONZALEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE: GUY, THAPAR, and NALBANDIAN, Circuit Judges.

PER CURIAM. Sara Maria Aguilar-Gonzalez, a native and citizen of Guatemala, petitions this court for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from the denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). As set forth below, we **DENY** the petition.

Aguilar-Gonzalez and her minor daughter entered the United States at Roma, Texas, on March 9, 2016. Upon their apprehension, the Department of Homeland Security (DHS) served Aguilar-Gonzalez with a notice to appear in removal proceedings, charging her with removability as an immigrant who, at the time of application for admission, was not in possession of a valid entry document.[1] *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I).

---

[1] The DHS also served Aguilar-Gonzalez's daughter with a notice to appear in removal proceedings. Aguilar-Gonzalez listed her daughter as a derivative beneficiary on her asylum application but did not name her daughter as a petitioner in this case. *See* Fed. R. App. P. 15(a)(2)(A).

In a hearing before an immigration judge (IJ), Aguilar-Gonzalez admitted the factual allegations set forth in the notice to appear and conceded removability as charged. Aguilar-Gonzalez filed an application for asylum and withholding of removal based on her race, political opinion, and membership in a particular social group and for protection under the CAT. Aguilar-Gonzalez claimed membership in two particular social groups: (1) indigenous Guatemalan women living in the Guatemalan Western Highlands and (2) indigenous Guatemalan women who cannot leave a relationship.

At the hearing on her application, Aguilar-Gonzalez testified that she was sexually assaulted by two men when she was a teenager and that she was verbally and physically abused by her daughter's father. Around the age of fourteen, Aguilar-Gonzalez went to work on a coffee plantation in Mexico where she was raped on multiple occasions by a man from her village named Edgar. When Aguilar-Gonzalez worked at a different coffee plantation in Guatemala around the age of fifteen, a supervisor named Waldemar sexually assaulted her and attempted to assault her on two other occasions. Aguilar-Gonzalez never told anyone about these sexual assaults.

Aguilar-Gonzalez also testified about the domestic abuse inflicted by her daughter's father, Oscar. Aguilar-Gonzalez began living with Oscar after their daughter was born in 2008. According to Aguilar-Gonzalez, "everything went fine" for the first year, but then Oscar began to mistreat her, insulting and beating her. After Aguilar-Gonzalez reported his abuse to a judge, Oscar was summoned to court, and the judge issued a restraining order or certificate, which Oscar refused to sign. Aguilar-Gonzalez separated from Oscar for a year; in 2015, she returned to him but then separated from him again.

Aguilar-Gonzalez also testified about her involvement with political organizations protesting against a mining company. Although Aguilar-Gonzalez was not physically harmed on account of her participation in these groups, the mining company's supporters threw stones at her

house and threatened her. Aguilar-Gonzalez further testified that a fire burned the area around her house a week after she came to the United States, but that she did not know who set the fire.

The IJ denied Aguilar-Gonzalez's application for asylum, withholding of removal, and CAT protection and ordered her removal to Guatemala. The IJ found that Aguilar-Gonzalez was marginally credible, adopting her testimony as his factual findings, but concluded that her testimony alone was insufficient to sustain her burden of proof. The IJ rejected Aguilar-Gonzalez's first particular social group—"indigenous Guatemalan women living in the Guatemalan Western Highlands"—on the basis that the proposed group was neither immutable nor particular. The IJ found that Aguilar-Gonzalez articulated a valid particular social group as to "indigenous Guatemalan women who cannot leave a relationship," but that she was not a member of that group because she left Oscar on multiple occasions. The IJ determined that, although Aguilar-Gonzalez experienced severe harm—sexual assaults and domestic abuse—rising to the level of persecution, she had failed to show that the harm was on account of her race or her membership in a particular social group or that the Guatemalan government was unable or unwilling to control the private actors who inflicted the harm. The IJ found that, with respect to her political opinion claim, Aguilar-Gonzalez had failed to show that the Guatemalan government would be unable or unwilling to protect her from other villagers who supported mining, that she experienced harm rising to the level of persecution, or that she could not avoid harm by relocating within Guatemala. The IJ concluded that Aguilar-Gonzalez had failed to meet the burden of demonstrating eligibility for asylum and therefore could not satisfy the higher burden for withholding of removal. As for Aguilar-Gonzalez's claim for CAT protection, the IJ determined that she had failed to show that the Guatemalan government would acquiesce in the actions of a private actor or that she faced a particular risk of being tortured by anyone in Guatemala.

Aguilar-Gonzalez filed an appeal, which the BIA dismissed. The BIA first noted that Aguilar-Gonzalez did not challenge the IJ's denial of her asylum claim based on political opinion. The BIA concluded that Aguilar-Gonzalez testified credibly and, departing from the IJ, that she provided sufficient corroboration. The BIA determined that Aguilar-Gonzalez had failed to demonstrate that any experienced or feared harm was on account of her indigenous race or her membership in a particular social group of "indigenous Guatemalan women living in the Guatemalan Western Highlands." While Aguilar-Gonzalez's appeal was pending, the BIA pointed out, the Attorney General issued a decision undermining the IJ's recognition of her particular social group of "indigenous Guatemalan women who cannot leave a relationship." *See Matter of A-B-*, 27 I. & N. Dec. 316, 320 (Att'y Gen. 2018) (rejecting proposed social group of women unable to leave their domestic relationships). The BIA concluded that, even if Aguilar-Gonzalez's proposed group were cognizable, she had not established membership in that group because she was able to leave Oscar. The BIA also affirmed the IJ's determination that Aguilar-Gonzalez had not established that the Guatemalan government was unable or unwilling to protect her from Oscar. Because Aguilar-Gonzalez had failed to satisfy the burden of proof for asylum, the BIA concluded, she had necessarily failed to satisfy the higher burden for withholding of removal. As for Aguilar-Gonzalez's claim for CAT protection, the BIA found no clear error in the IJ's determination that she had failed to establish that it is more likely than not that she will be tortured by or with the acquiescence of a Guatemalan official.

This timely petition for review followed. "Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). We review the agency's factual findings for substantial

evidence, *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006), reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

Aguilar-Gonzalez first argues that the agency erred in denying her application for asylum. "An alien who seeks asylum must establish that she meets the definition of a 'refugee,' which means a person who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)).

Aguilar-Gonzalez contends that this court's decision in *Juan-Pedro v. Sessions*, 740 F. App'x 467 (6th Cir. 2018), compels reversal of the denial of her asylum claim. In that case, the petitioner asserted that MS-13 gang members brutally attacked her family on account of their membership in a particular social group of indigenous Guatemalans. The BIA found that the petitioner had failed to establish a nexus between the harm suffered by the petitioner and her children in Guatemala and their membership in a particular social group. *Id*. at 470. The petitioner, however, had submitted a declaration stating that "MS 13 has targeted me and my family because they know Akate[k]o People do not go to the police . . . [because] they would just ignore us." *Id*. at 471. The petitioner's declaration therefore "causally connect[ed] her status as a member of the Akateko people to the reason she was singled out by MS-13: she was unlikely to report the crime to the police . . . because the police will ignore any complaints." *Id*. This court held that the BIA erred in ignoring the petitioner's declaration and other record evidence connecting the MS-13 attack on the petitioner and her children to their indigenous status and that the BIA's finding of no nexus was not supported by substantial evidence. *Id*. at 470–72.

In contrast, Aguilar-Gonzalez fails to point to any evidence connecting the sexual assaults and domestic abuse suffered by her to her status as an indigenous Guatemalan woman. Without

evidence suggesting that the men targeted her on account of her indigenous status, Aguilar-Gonzalez cannot show that the record compels the conclusion that she demonstrated the required nexus to a protected ground—either her indigenous race or her membership in a particular social group of "indigenous Guatemalan women living in the Guatemalan Western Highlands."

Aguilar-Gonzalez does not address the BIA's determination that she was not a member of the particular social group of "indigenous Guatemalan women who cannot leave a relationship," nor does she address the BIA's other grounds for affirming the denial of her asylum claim. Aguilar-Gonzalez has therefore forfeited any challenge to those grounds. *See Santos-Santos v. Barr*, 917 F.3d 486, 491 (6th Cir. 2019). Aguilar-Gonzalez also fails to address her claim for withholding of removal, thereby forfeiting any challenge to the denial of that claim. *See Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005).

Aguilar-Gonzalez argues that the agency erred in denying her application for CAT protection. To be eligible for CAT protection, Aguilar-Gonzalez must demonstrate that it is more likely than not that, if she is removed, she will suffer torture "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *see* 8 C.F.R. § 1208.16(c)(2).

The BIA affirmed the IJ's finding that Aguilar-Gonzalez had not established that it is more likely than not that she will be tortured by or with the acquiescence of a Guatemalan official, given that Oscar was summoned to court to answer her allegations of abuse. Aguilar-Gonzalez contends that the fact that the abuse continued after Oscar was summoned to court and issued a restraining order proves that the Guatemalan government cannot protect her. But this fact does not compel the conclusion that the government would turn a deliberate blind eye toward Aguilar-Gonzalez's mistreatment.

According to Aguilar-Gonzalez, sexual violence against indigenous women is endemic in Guatemala. The 2015 Human Rights Report for Guatemala and other background evidence submitted by Aguilar-Gonzalez reflect that, although violence against women remains a problem in Guatemala, the government has made efforts to address this problem, including establishing the Office of the Ombudsman for Indigenous Women to provide social services for indigenous women who have suffered domestic or social violence. *See Rreshpja v. Gonzales*, 420 F.3d 551, 557 (6th Cir. 2005). The record does not compel the conclusion that Aguilar-Gonzalez would more likely than not be tortured by the Guatemalan government or with its acquiescence.

For these reasons, we **DENY** Aguilar-Gonzalez's petition for review.