NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0164n.06

Case No. 23-3548

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| | ) | Apr 11, 2024 |
| EDWIN REYES-RODRIGUEZ, | ) | KELLY L. STEPHENS, Clerk |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) | |
| Respondent. | ) | O P I N I O N |
| | ) | |

Before: SUTTON, Chief Judge; STRANCH and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Petitioner Edwin Reyes-Rodriguez seeks review of the Board of Immigration Appeals' (the "Board") order denying his motion to terminate or reopen removal proceedings. Because we find that the Board did not abuse its discretion, we deny the petition for review.

I.

Reyes-Rodriguez, a native and citizen of Honduras, entered the United States in April 2006 without inspection. In October 2006, the Department of Homeland Security ("DHS") initiated removal proceedings against Reyes-Rodrigeuz and served him with a Notice to Appear ("NTA") in immigration court in Detroit, Michigan "on a date to be set" at "a time to be set." On December 22, 2006, the immigration court followed up with a notice of hearing, which specified the date and time for his initial removal hearing. Reyes-Rodriguez, along with counsel, attended this and all

subsequent hearings. During his proceedings in immigration court, Reyes-Rodriguez admitted to the NTA's factual allegations and conceded to the charge of removability. As a result, the immigration judge ("IJ") sustained the charge.

On June 28, 2008, Reyes-Rodriguez applied for asylum, withholding of removal under the Immigration Nationality Act ("INA"), and withholding of removal under the Convention Against Torture ("CAT") based on his religious affiliation and membership in a particular social group. On May 5, 2009, an IJ denied Reyes-Rodriguez's applications, finding him statutorily ineligible for asylum or withholding from removal under the INA and concluding that his claims otherwise failed on the merits. As for relief under the CAT, the IJ found Reyes-Rodriguez's evidence insufficient to show that he would more likely than not be subjected to torture with the Honduran government's acquiescence or consent if he were to return. The IJ ordered Reyes-Rodriguez removed from the United States to Honduras. The Board affirmed this decision on July 21, 2010.

Despite this ruling, Reyes-Rodriguez remained in the United States for several more years. Then, in February 2019, approximately one month before his deportation, and nearly nine years after the Board's affirmance of the IJ's order for his removal to Honduras, Reyes-Rodriguez filed a motion before the Board to set aside the removal order and terminate removal proceedings based on the Supreme Court's June 2018 decision in *Pereira v. Sessions*, 585 U.S. 199 (2018). In *Pereira*, the Supreme Court held that an NTA that does not provide the time or place of a removal hearing "is not a 'notice to appear under section 1229(a)'" for purposes of triggering the stop-time rule—a provision used to determine whether a noncitizen has accumulated the ten years of continuous physical presence in the United States necessary to satisfy eligibility requirements for cancellation of removal. *Id.* at 201–02. Based on *Pereira's* holding and its reiteration in *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), Reyes-Rodriguez argued that the immigration court

lacked jurisdiction to order his removal because his NTA did not specify the date and time of his initial hearing, and subsequent notices of hearing that did include the date and time information could not cure this deficiency. As such, Reyes-Rodriguez argued that his removal proceedings must be terminated. In the alternative, Reyes-Rodriguez argued that the Board must reopen the removal proceedings to permit him to apply for cancellation of removal because, without operation of the stop-time rule, he had accumulated more than the requisite ten years of continuous physical presence in the United States and met the other requirements to qualify for this relief. Although Reyes-Rodriguez conceded that his motion to reopen was untimely, he argued for an equitable exception to the filing deadline because, under *Niz-Chavez*, the government's failure to serve him a proper NTA meant that the clock measuring his presence in the United States had continued to run uninterrupted since his arrival in 2006.

The Board denied Reyes-Rodriguez's motion on multiple grounds—two of which are relevant here. First, as to the motion to terminate, the Board found that binding precedent following the *Pereira* and *Niz-Chavez* decisions established that NTAs that lack information about the time and place of a hearing do not divest an immigration court of its jurisdiction so long as subsequent notices of hearing contain this information—which was the case here. Second, turning to the motion to reopen, the Board declined to toll the filing deadline because Reyes-Rodriguez had not shown that some "extraordinary circumstance" had prevented him from timely applying for cancellation of removal. Reyes-Rodriguez's petition for review followed. His petition does not reprise the argument, based on *Pereira,* that the IJ lacked jurisdiction to adjudicate his application. *See Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314–15 (6th Cir. 2018) (concluding that *Pereira's* "emphatically 'narrow' framing" limited its reach to the specific question of whether an NTA lacking the time and place information required by 8 U.S.C. § 1229(a) triggers the stop-

time rule); *see also Ramos Rafael v. Garland*, 15 F.4th 797, 800-01 (6th Cir. 2021) (same). We, therefore, treat this issue as abandoned and limit our analysis to the grounds on which he claims the Board abused its discretion. *See Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016); *see also Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument addressing the issue in his brief).

II.

"A motion to reopen is a form of procedural relief that asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." *Dada v. Mukasey*, 554 U.S. 1, 12 (2008) (quoting 1 Charles Gordon, Stanley Mailman, & Stephen Yale-Loehr, *Immigration Law and Procedure* § 3.05[8][c] (rev. ed. 2007). The Board will consider such motions in accordance with the procedures and requirements set forth in 8 C.F.R. § 1003.2, which includes a motion deadline of "90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R § 1003.2(c)(2). We review the Board's denial of such motions for an abuse of discretion. *Santos-Santos v. Barr*, 917 F.3d 486, 489 (6th Cir. 2019). "The Board abuses its discretion only when its determination was made 'without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id*. (quoting *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006)). The Board "retains broad discretion to grant or deny" a motion to reopen. *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007). As such, a petitioner seeking to reopen removal proceedings "bears a 'heavy burden.'" *Id*. (citing *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992)).

III.

Here, Reyes-Rodriguez contends that the *Pereira* and *Niz-Chavez* decisions provided an exceptional circumstance beyond his control that justified equitable tolling and that the Board abused its discretion when it refused to toll the motion to reopen deadline to permit him to apply for cancellation of removal. We disagree.

*Equitable Tolling.* "Strictly defined, equitable tolling is the doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007) (cleaned up). More broadly, this court "has applied the doctrine of equitable tolling to otherwise time-barred motions to reopen." *Id*. (emphasis omitted). To determine whether equitable tolling may apply to an otherwise time-barred motion to reopen, we generally consider five factors: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008). Here, the Board's decision focused on the third factor. "Due diligence requires [a noncitizen] to prove that the delay in filing the motion to reopen was due to an 'exceptional circumstance beyond his control.'" *Id.*; *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (requiring a litigant to establish "that he has been pursuing his rights diligently, and . . . that some extraordinary circumstance stood in his way and prevented timely filing") (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). A failure to demonstrate due diligence can be sufficient alone to foreclose equitable tolling. *Barry*, 524 F.3d at 725 (finding that the petitioner was not

entitled to equitable relief because "she failed to exercise due diligence in pursuing her rights to file a motion to reopen").

The Board determined that even assuming, for purposes of equitable tolling, *Pereira* and *Niz-Chavez* rendered the issuance of a non-compliant NTA an exceptional or extraordinary circumstance, it did not prevent Reyes-Rodriguez from applying for cancellation sooner. This is because, "regardless of the operation of the stop-time rule," he had not accrued the requisite ten years of continuous physical presence in the United States to qualify for cancellation of removal at the close of his removal proceedings in 2010. (A.R. 6). The Board's reasoning in this regard is sound. Reyes-Rodriguez entered the United States in April 2006 without inspection, was ordered removed by the IJ in May 2009, and had his order of removal affirmed by the Board in July 2010. This chronology shows that at the close of the 90-day motion to reopen filing window, Reyes-Rodriguez had only been in the United States a little more than four years—well short of the ten years required to show eligibility for cancellation purposes. That said, the operation of the stop-time rule was meaningless. Reyes-Rodriguez was not eligible to apply for cancellation of removal at any point before the 90-day window closed. *See* 8 C.F.R. § 1003.2(c)(2) (establishing the starting point for accruing the motion-to-reopen deadline as the date the final administrative decision was rendered). Therefore, the Board rationally concluded that neither *Pereira* nor *Niz-Chavez* created an extraordinary (or exceptional) circumstance that prevented Reyes-Rodriguez from meeting the motion-to-reopen deadline. We find no abuse of discretion in light of this rational explanation.

Reyes-Rodriguez resists this conclusion, however, asserting that the Board's refusal to toll the motion deadline contradicts several of its previous decisions involving "the same circumstances." (Pet'r's. Br. 9). According to Reyes-Rodriguez, in a series of unpublished

decisions, the Board tolled the motion to reopen deadline to permit petitioners to apply for cancellation of removal in light of *Pereira* after the petitioners had accrued enough continuous physical presence to qualify for cancellation. The principles of judicial consistency and *Skidmore* deference, Reyes-Rodriguez asserts, required the Board to follow suit here.[1]

Contrary to Reyes-Rodriguez's assertion, the Board did not ignore the cases he submitted. It considered these unpublished decisions and determined that they "rest[ed] upon specific factual scenarios and procedural postures pertinent to the individual respondent, not all of which [were] available for review." (A.R. 8). Although Reyes-Rodriguez generally argues that his case is more compelling than those described in the unpublished decisions, he provides no explanation for this argument, nor does he produce evidence to substantiate it or show how the circumstances of petitioners in those cases warrant the same outcome here. Indeed, unlike Reyes-Rodriguez, most of the petitioners in those cases had filed motions to reopen during the pendency of their appeals— meaning the motion to reopen deadline was not implicated—or involved the Board's invocation of its *sua sponte* authority rather than application of equitable tolling. And for those petitioners whose motions came during the pendency of their appeals, most (if not all) met or were close to meeting the continuous-physical-presence threshold. The petitioners who, like Reyes-Rodriguez, missed their filing deadlines, were the ones who benefitted from *sua sponte* relief. To the extent Reyes-Rodrigeuz asks that we consider those unpublished decisions as a basis for him to obtain relief, we are barred from doing so. *Barry*, 524 F.3d at 723 ("We previously have held that the

---

[1] *Skidmore* deference counsels courts to weigh "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). We detect no trouble with the application of deference here. To begin, we are not faced here with an agency's interpretation and application of its own regulations; as noted, the Board faithfully followed § 1003.2(c). Rather, Reyes-Rodriguez challenges its consideration of an equitable remedy. The Board does not treat its own unpublished decisions as binding authority. *See Matter of Echeverria*, 25 I.&N. Dec. 512, 519 (BIA 2011); *see also* 8 C.F.R. § 1003.1(g).

decision whether to invoke *sua sponte* authority under 8 C.F.R. § 1003.2(a) is committed to the unfettered discretion of the [Board] and therefore is not subject to judicial review.") (cleaned up)). Consequently, we are not convinced that the Board "inexplicably departed" from its previous (nonbinding) decisions, and we accept that it provided "a rational explanation" for declining to apply equitable tolling here. *See Haddad*, 437 F.3d at 517 (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)). No abuse of discretion occurred.

*Forced Removal and Ultra Vires Regulation.* Reyes-Rodriguez's remaining challenges also fall short. First, Reyes-Rodriguez asks this court to address two issues: (1) whether his forced removal to Honduras in 2019 affected the stop-time rule and (2) whether 8 C.F.R. § 1003.18(b), as a claim-processing rule, contradicts or is "ultra vires" to 8 U.S.C. § 1229(a). Because the Board did not reach the question Reyes-Rodriguez raises concerning the impact of his 2019 removal from the country in denying his motion, we are generally foreclosed from addressing it. *See Mbonga v. Garland*, 18 F.4th 889, 893 (6th Cir. 2021).

As to the legality of 8 C.F.R. § 1003.18(b), the government makes the unrebutted argument that Reyes-Rodriguez has forfeited this challenge because he failed to raise a claim-processing objection to his deficient NTA under 8 U.S.C. § 1229(a) before the IJ.[2] *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (providing that "an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point") (quoting *Eberhart v. United States,* 546 U.S. 12, 15 (2005)). It is undisputed that Reyes-Rodriguez first raised his two-fold claim-processing challenge in his motion to reopen. The Board determined that he forfeited the first leg of his argument—that his NTA violated the statute and the regulation—by failing to raise it in immigration court. *See Matter of Fernandes*, 28 I. & N. Dec.

---

[2] The Petitioner's failure to file a reply brief leaves us with no counter to the government's argument.

605, 609 (BIA 2022). We agree. And the second leg of his argument—that § 1003.18(b) is ultra vires—is forfeited as well. True, parties can sometimes raise claims that were never addressed in administrative proceedings. *See, e.g.*, *Carr v. Saul*, 593 U.S. 83, 92 (2021) (observing that "it is sometimes appropriate for courts to entertain constitutional challenges to statutes or other agency-wide policies even when those challenges were not raised in administrative proceedings"). But that is not a concern here, for Reyes-Rodriguez has not directly challenged the statutory validity of his NTA before this court. Rather, he has mounted a frontal attack on the regulation itself. But, without the anchoring claim of a statutorily non-conforming NTA, his attack on the regulation cannot stand.

*Lack of Impartiality.* Finally, Reyes-Rodriguez argues that the Board departed from procedural regularity when it sent copies of this case's supplemental briefing schedule to the Immigration and Customs Enforcement ("ICE") Headquarters, specifically addressed to James T. Dehn, a member of the Immigration Law and Practice Division, when no one from ICE Headquarters had previously participated in this matter. Reyes-Rodriguez argues that the Board's actions breached its duty of impartiality and created an appearance of impropriety pursuant to 5 C.F.R. §§ 2635.101(b)(8) and (b)(14). Reyes-Rodriguez also accuses the Board of violating other regulations governing impartiality, namely §§ 2635.501 to 2635.503, asserting that Mr. Dehn's later appointment to the bench as an IJ in Sterling, Virginia further highlights the appearance of a conflict of interests. These arguments are largely underdeveloped as they fail to specify how the alleged ethical violations undermined the fairness of his proceedings before the Board or what form of relief he seeks as a result pursuant to the cited provisions. These failures alone are likely fatal to his claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (providing that arguments raised in a perfunctory manner are deemed waived). Nonetheless, to

the extent that Reyes-Rodrigeuz intends to suggest that the Board's actions raise due process concerns, we see no evidence that the Board's actions compromised the fundamental fairness of his proceedings. *See Huicochea-Gomez v. I.N.S.*, 237 F.3d 696, 699 (6th Cir. 2001) ("Fifth Amendment guarantees of due process extend to [noncitizens] in deportation proceedings, entitling them to a full and fair hearing."). As the Board noted, ICE is a component of the DHS and thus a party in this case. Its attorneys appeared in the case and were entitled to receive case-related information. Reyes-Rodriguez provides no evidence that the BIA sent the briefing schedule information to DHS for improper reasons, nor does he explain how doing so demonstrates bias, and his speculation to the contrary is unconvincing. Similarly, Reyes-Rodriguez fails to provide any explanation as to why or how Mr. Dehn's later appointment as an IJ (in an entirely different jurisdiction) affected his proceedings or demonstrates judicial bias, and we discern none here. Given these serious deficiencies, Reyes-Rodriguez cannot carry his burden to show that the Board's actions "led to a denial of justice" thereby implicating his due process rights during his proceedings before the Board. *See id.* (quoting *Dokic v. I.N.S.*, 999 F.2d 539 (6th Cir. 1993) (per curiam) (table)).

## IV.

For the foregoing reasons, we deny the petition for review.