**Anton CAMAJ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 02–3340.

United States Court of Appeals, Sixth Circuit.

Oct. 10, 2003.

Fakhri W. Yono, West Bloomfield, MI, for Petitioner.

Daniel E. Goldman, Emily A. Radford, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: DAVID A. NELSON, GIBBONS, and SUTTON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

The petitioner seeks review of an order in which the Board of Immigration Appeals dismissed an appeal from the denial of a motion to reopen a proceeding where

a deportation order had been issued *in absentia.* We believe there is a question as to whether the petitioner was given proper notice of the hearing at which he failed to appear. Written notice had been served on the petitioner's lawyer, but had not been served on the petitioner in person—as it should have been, under the applicable statute, if practicable. Because the practicability question has not been addressed below, we shall remand the case for further proceedings.

## I

The petitioner, Anton Camaj, is a native and citizen of the former Yugoslavia. He entered the United States without inspection in 1994. The Immigration and Naturalization Service initiated deportation proceedings against Mr. Camaj in March of 1995 by personally serving him with an Order to Show Cause and Notice of Hearing. The hearing was set for 9:00 a.m., April 13, 1995, at an address on East Jefferson Street in Detroit, Michigan.

Mr. Camaj appeared at the appointed time and place on April 13, 1995, but the hearing—which the immigration judge conducted by telephone from Chicago—was continued so that Camaj could obtain counsel. In resetting the hearing for 10:00 a.m. on April 27, 1995, the immigration judge advised Mr. Camaj that deportation could be ordered in his absence if he did not appear. The judge's clerk, who was also located in Chicago, sent Mr. Camaj notice by certified mail of the date, time, and place of the continued hearing. The place was the same East Jefferson Street location to which Mr. Camaj had reported for the initial hearing.

On April 27, 1995, Mr. Camaj again appeared at the appointed time and place. Again, the immigration judge conducted the hearing by telephone from Chicago. Now represented by an attorney, Paul Hughes, Camaj conceded deportability but requested asylum in the United States. The hearing was then continued until 9:00 a.m. on September 25, 1995, and the immigration judge reminded Mr. Camaj of the consequences of a failure to appear. No mention was made in court of the location of the continued hearing.

Later in the day the immigration judge's clerk sent notice to Mr. Hughes, by certified mail, that the September 25 hearing would be held at 9:00 a.m. at the U.S. Courthouse on West Lafayette Street in Detroit—a different location than that of the April 13 and 27 hearings. About two months after receiving the notice, Hughes wrote Camaj a letter reminding him of the hearing. The letter is not in the record, and we can only speculate as to whether it said anything about the change in location.

By 9:34 a.m. on September 25, 1995, Mr. Camaj had not appeared for the hearing at the West Lafayette Street courthouse. After stating that Camaj had received proper notice of the hearing,[1] the immigration judge (now physically present in Detroit) found that Camaj had abandoned his claims for relief from deportation. The judge therefore ordered him deported.

At 9:00 a.m. on September 25, according to his uncontroverted affidavit, Mr. Camaj had presented himself at the same East Jefferson location where he had gone for the earlier hearings. Upon learning that he was in the wrong place, and being directed to the courthouse on West Lafayette, Mr. Camaj immediately proceeded to

1. The immigration judge said that at the hearing of April 27, 1995, "the Court advised [Mr. Camaj] as to the date, time, and place" of the continued hearing. In fact, only the date and time were announced in open court. The immigration judge correctly stated that written notice covering the place of the hearing had been given to the attorney.

the courthouse. He arrived at the hearing room at approximately 9:40 a.m., whereupon he was told to contact his attorney.

Mr. Camaj telephoned Mr. Hughes, who instructed him to return to the hearing room at 1:00 p.m. because Hughes would be present then for another hearing. Mr. Camaj did so. Informing the immigration judge that Camaj was present, Hughes requested that the case be reopened. The request was denied.

Mr. Camaj appealed his deportation order to the Board, arguing that he had shown good cause for his failure to appear. The Board construed the appeal as a timely motion to reopen and remanded the case to the immigration judge for consideration on that basis.

On remand, the service filed a memorandum stating that it did not oppose the motion to reopen. The immigration judge nevertheless denied the motion. Rejecting Mr. Camaj's argument that he should have been notified orally of the hearing location, the judge held that the written notice sent to Camaj's attorney was sufficient. The judge held further that no "exceptional circumstances" justified Camaj's failure to appear. Mr. Camaj appealed to the Board, which upheld the immigration judge's decision. The present petition for review followed within the time allowed.

## II

Section 242B(c)(1) of the Immigration and Nationality Act ("INA") provides for issuance of a deportation order *in absentia* when, among other things, certain requirements as to notice are clearly shown to have been met. The statute provides that

"[a]ny alien who, after written notice required under subsection (a)(2) of this section has been provided to the alien or the alien's counsel of record, does not attend a [deportation] proceeding ... shall be ordered deported ... in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is deportable." 8 U.S.C. § 1252b(c)(1).[2]

The cross-referenced subsection, § 242B(a)(2) of the INA, makes it clear that, if practicable, the "written notice" that is "required" must be given to the alien in person. Only if in-person service on the alien is not practicable does the statute provide for service by certified mail, and only then is there an option to notify the alien through counsel. What subsection (a)(2) says, specifically, is this:

"In deportation proceedings ... written notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any) [of] the time and place at which the proceedings will be held, and ... the consequences under subsection (c) of this section of the failure, except under exceptional circumstances, to appear at such proceedings...." 8 U.S.C. § 1252b(a)(2).

Reading subsection (a)(2) and (c)(1) together, as we must, we see no legitimate basis for concluding that the mailing of written notice to counsel will pass muster in a situation where it would have been practicable to give written notice to the alien in person.

Under INA § 242B(c)(3), an *in absentia* order of deportation may be rescinded if

---

**2.** Section 1252b was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208 ("IIRIRA"). It applies in this case, however, because the petitioner's deportation proceedings began before April 1, 1997, the effective date of IIRIRA. See, *e.g.*, *Scorteanu v. INS*, 339 F.3d 407, 409 n. 1 (6th Cir.2003).

the alien moves to reopen the proceeding and meets one of two tests. First, if the alien files his motion to reopen within 180 days of the order of deportation, he may obtain rescission by showing that "his failure to appear was because of exceptional circumstances." 8 U.S.C. § 1252b(c)(3)(A). Second, the alien may obtain rescission at any time by showing that he did not receive "notice in accordance with [INA § 242B(a)(2)]." See 8 U.S.C. § 1252b(c)(3)(B). The denial of a motion to reopen deportation proceedings under INA § 242B(c)(3) is reviewed for abuse of discretion. See, e.g., Scorteanu v. INS, 339 F.3d 407, 411 (6th Cir.2003).

### A

Turning first to the issue of notice, we note that several courts of appeals—including our own—have held that service by certified mail to an alien's attorney satisfies the INA's notice requirement. See Scorteanu, 339 F.3d at 412; Dobrota v. INS, 311 F.3d 1206, 1211 (9th Cir.2002); Anin v. Reno, 188 F.3d 1273, 1277 (11th Cir.1999). In these cases, however, the courts did not address the language of INA § 242B(a)(2) that authorizes notice by certified mail only when in-person service on the alien is "not practicable."

The Board, on the other hand, has directly addressed the "not practicable" language of INA § 242B(a)(2) and has concluded that in-person service is not practicable unless the alien has been "present in immigration court"—i.e., unless the alien "has appeared before the Immigration Judge," presumably under circumstances where it was practicable for the judge or the judge's designee to give the alien written notice on the spot. In re Grijalva, 21 I. & N. Dec. 27, 34–35, 1995 WL 314388 (B.I.A.1995). We must defer to the Board's interpretation if it is reasonable. See Chevron U.S.A., Inc. v.

Natural Resources Defense Council, 467 U.S. 837, 843–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Because it gives meaning to the statutory text without placing an undue burden on the Office of the Immigration Judge, the Board's interpretation of "not practicable" appears reasonable to us—as it has to at least two other courts of appeals. See Giday v. INS, 113 F.3d 230, 233 (D.C.Cir.1997); Tedeeva v. INS, 88 F.3d 826, 827 (9th Cir.1996).

In light of the language of INA § 242B(a)(2), as it has been interpreted by the Board, we do not read Scorteanu or cases like it as approving service by certified mail where service in person would have been practicable. In Scorteanu the alien was not in the immigration court at the time his deportation hearing was rescheduled, see 339 F.3d at 409, so we had no occasion there to consider whether in-person service would have been required had the alien been present.

To conclude that INA § 242B(a)(2) requires in-person service on the alien when such service is practicable, however, is not necessarily to conclude that in-person service was practicable in the case at bar. If Camaj was "present in immigration court" on April 27, 1995, when his hearing was continued until September 25, the immigration judge was some 300 miles away, as was the clerk who mailed notice of the continued hearing to Camaj's attorney. We do not know what court personnel, if any, were with Camaj in the Detroit hearing room, or whether it would have been practicable for any such personnel to receive and turn over to Camaj a notice transmitted from Chicago electronically, or whether it would have been practicable for the immigration judge or her clerk to have had someone in Detroit prepare a written notice for Camaj before he left the building. In these circumstances, we think it is

appropriate to remand the case for initial consideration by the Board—or by the immigration judge, upon further remand—of whether in-person service was practicable. If it was practicable, Camaj was entitled to have his claim for asylum considered.

We recognize that Mr. Camaj has never argued, before the Board or before this court, that the written notice provided to his attorney was insufficient under INA § 242B(a)(2). (Camaj's only argument with respect to notice was that he should have been notified orally of the location of his hearing—an argument that finds no support in the statute.) In general, we do not address issues that were not raised below, or that were not briefed on appeal. See, *e.g., St. Mary's Foundry, Inc. v. Employers Insurance of Wausau,* 332 F.3d 989, 995 (6th Cir.2003); *Rybarczyk v. TRW, Inc.,* 235 F.3d 975, 984 (6th Cir. 2000).

But the rules against addressing unraised issues are not jurisdictional. See *St. Marys Foundry,* 332 F.3d at 995–96 (citing *Hormel v. Helvering,* 312 U.S. 552, 557, 558, 61 S.Ct. 719, 85 L.Ed. 1037 (1941)); *United States National Bank of Oregon v. Independent Insurance Agents of America,* 508 U.S. 439, 445–48, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993). We may exercise our discretion to resolve—or remand—issues not previously raised to avoid injustice in an "exceptional case[ ]." See, *e.g., Hormel,* 312 U.S. at 558, 61 S.Ct. 719; *St. Marys Foundry,* 332 F.3d at 996. And we may address legal questions *sua sponte* when their resolution may be dispositive. See, *e.g., Rybarczyk,* 235 F.3d at 984.

In light of the apparent innocence of Mr. Camaj's mistake as to the location of the September 25 hearing and his diligence in seeking to correct that error, and recalling that the service did not oppose Camaj's motion to reopen, we think that justice requires consideration of the sufficiency of the notice given here notwithstanding Camaj's failure to raise the issue. It is therefore within our power to decide, as we do, that Camaj was entitled to in-person service if "practicable," and to remand for consideration of the practicability of such service.

B

If we were to hold that there was an abuse of discretion in the Board's disposition of the "exceptional circumstances" issue, a remand would be unnecessary. As the record now stands, however, a majority of the members of this panel doubt that such an abuse of discretion has been demonstrated. Without deciding that question now, we are unanimous in the view that a remand is appropriate.

III

The petition for review is **GRANTED**, and the Board's order dismissing Camaj's appeal is **VACATED**. The case is **REMANDED** to the Board for further proceedings not inconsistent with this opinion.