*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0344p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

ANTON CAMAJ,

  *Petitioner,*

  *v.*

No. 09-3926

ERIC H. HOLDER, JR., United States Attorney
General,

  *Respondent.*

_____

On Petition for Review of an Order
from the Board of Immigration Appeals.
No. A073 395 461.

Decided and Filed: November 8, 2010

Before: GUY and GRIFFIN, Circuit Judges; BARZILAY, Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Caridad Pastor Cardinale, PASTOR & ASSOCIATES, P.C., Troy
Michigan, for Petitioner. Anthony P. Nicastro, Ernesto H. Molina, Jr., UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

BARZILAY, Judge. Petitioner-Appellant Anton Camaj seeks review of an order
of the Board of Immigration Appeals ("the Board") affirming an Immigration Judge's
("IJ") denial of his motion to reopen proceedings after the issuance of an *in absentia*
deportation order. He challenges the validity of the order on the grounds that he did not
receive legally sufficient notice of the hearing at which he failed to appear or, in the

_____

[*]The Honorable Judith M. Barzilay, Judge for the United States Court of International Trade,
sitting by designation.

1

alternative, that the IJ unlawfully treated his slight tardiness to the hearing as a failure

to appear.  For the reasons below, we find that the IJ did not abuse her discretion in

finding sufficient notice, and we further must find that we do not have subject matter

jurisdiction to consider Camaj's alternative claim.  Therefore, we affirm the Board's

decision and deny Camaj's petition for review.

## I. Background & Procedural History

This is the second time this matter has come before our Court.  In the previous,

October 2003 opinion, we summarized the relevant facts as follows

> The petitioner, Anton Camaj, is a native and citizen of the former
> Yugoslavia.  He entered the United States without inspection in 1994.
> The Immigration and Naturalization Service initiated deportation
> proceedings against Mr. Camaj in March of 1995 by personally serving
> him with an Order to Show Cause and Notice of Hearing.  The hearing
> was set for 9:00 a.m., April 13, 1995, at an address on East Jefferson
> Street in Detroit, Michigan.

> Mr. Camaj appeared at the appointed time and place on April 13,
> 1995, but the hearing–which the immigration judge conducted by
> telephone from Chicago–was continued so that Camaj could obtain
> counsel.  In resetting the hearing for 10:00 a.m. on April 27, 1995, the
> immigration judge advised Mr. Camaj that deportation could be ordered
> in his absence if he did not appear.  The judge's clerk, who was also
> located in Chicago, sent Mr. Camaj notice by certified mail of the date,
> time, and place of the continued hearing.  The place was the same East
> Jefferson Street location to which Mr. Camaj had reported for the initial
> hearing.

> On April 27, 1995, Mr. Camaj again appeared at the appointed
> time and place.  Again, the immigration judge conducted the hearing by
> telephone from Chicago.  Now represented by an attorney, Paul Hughes,
> Camaj conceded deportability but requested asylum in the United States.
> The hearing was then continued until 9:00 a.m. on September 25, 1995,
> and the immigration judge reminded Mr. Camaj of the consequences of
> a failure to appear.  No mention was made in court of the location of the
> continued hearing.

> Later in the day the immigration judge's clerk sent notice to Mr.
> Hughes, by certified mail, that the September 25 hearing would be held
> at 9:00 a.m. at the U.S. Courthouse on West Lafayette Street in Detroit–a
> different location than that of the April 13 and 27 hearings.  About two

months after receiving the notice, Hughes wrote Camaj a letter reminding him of the hearing. The letter is not in the record, and we can only speculate as to whether it said anything about the change in location.

By 9:34 a.m. on September 25, 1995, Mr. Camaj had not appeared for the hearing at the West Lafayette Street courthouse. After stating that Camaj had received proper notice of the hearing, the immigration judge (now physically present in Detroit) found that Camaj had abandoned his claims for relief from deportation. The judge therefore ordered him deported.

*Camaj v. INS*, 78 F. App'x 465, 466-67 (6th Cir. 2003) (unpublished) (footnote omitted).

Camaj timely appealed. Upon review, this court held that, pursuant to 8 U.S.C. § 1252b(a)(2) and (c)(1),[1] the Immigration Court must have provided Camaj with written notice of the date, time, and location of the missed hearing "in person," if "practicable," before issuing the *in absentia* deportation order. *Id.* at 467; *see* § 1252b(a)(2) & (c)(1). If not practicable, service of notice upon Camaj's counsel, which occurred, would suffice. *Camaj*, 78 F. App'x at 467. Specifically, the court noted that

[i]f Camaj was "present in immigration court" on April 27, 1995, when his hearing was continued until September 25, the immigration judge was some 300 miles away, as was the clerk who mailed notice of the continued hearing to Camaj's attorney. We do not know what court personnel, if any, were with Camaj in the Detroit hearing room, or whether it would have been practicable for any such personnel to receive and turn over to Camaj a notice transmitted from Chicago electronically, or whether it would have been practicable for the immigration judge or her clerk to have had someone in Detroit prepare a written notice for Camaj before he left the building.

*Id.* at 468. Accordingly, the court remanded the matter to the Board, ordering it to examine the particular facts and circumstances as they existed in 1995 at the East

---

[1]While the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") repealed § 1252b, the statute nevertheless applies in this case because Camaj's deportation proceedings began prior to the act's effective date. *Camaj*, 78 F. App'x at 467 n.2.

Jefferson Street location to determine the practicability of in-person service upon Camaj. *Id.* at 469. The Board then further remanded the matter to a new IJ.[2] J.A. 119.

On October 23, 2007, after an evidentiary hearing and consulting both parties' briefs, the IJ issued an oral decision finding in-person service upon Camaj to have been impracticable. J.A. 5-8. In reaching this conclusion, the IJ relied in substantial part on the affidavit of Michael Dobson, a former Assistant District Counsel for the INS who represented the government in this matter in 1995. J.A. 12-14, 106-07. Dobson was present at the April 27 "master hearing" where the September 25 hearing at issue was scheduled. J.A. 12-13, 106. In his affidavit, he noted that master hearings at the East Jefferson Street location occurred in a hearing room where the IJ presided telephonically. J.A. 13, 106. At that time, there existed no immigration court facility in Detroit, Michigan, and no court personnel were present at the East Jefferson Street location. J.A. 13, 106. Moreover, Dobson indicated that there was no facsimile, telefacsimile, or other electronic equipment in the hearing room through which the Immigration Court could have sent Camaj notice. J.A. 14, 106. In addition to Dobson's affidavit, the IJ relied upon the transcript of the April 27 hearing, noting that the only parties physically present at the hearing were Camaj and counsel. J.A. 13-14. Finally, the IJ noted that it was not practicable to locate a third party to personally deliver notice to Camaj at the April 27 hearing. J.A. 17.

Camaj appealed to the Board, which upheld the IJ's decision without opinion. J.A. 1-2. Camaj again appealed to this Court.

## II. Standard of Review

The court reviews a denial of a motion to reopen for an abuse of discretion. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). The court will disturb a denial only if it was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination

---

[2]The IJ who issued the deportation order in 1995 was no longer on the immigration court at the time of remand. J.A. 13.

against a particular race or group." *Id.* (citation & internal quotation marks omitted).
When, as in this case, the Board summarily affirms an IJ's reasoning, we review the IJ
decision directly. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).

## A. Sufficiency of Notice

Camaj asserts that the IJ abused her discretion in denying his petition because
"[p]ersonal service was practicable at the time of the[] proceedings." Appellant Br. 8.
In support of this contention, Camaj states that:

> INS agents at the [East Jefferson Street location] welcomed the persons
> who had hearings, reviewed their hearing notices, checked the list to
> make sure they were on the hearing list for that day and even provided
> water and bathroom facilities for the persons attending hearings. All that
> would have been required to personally serve the Petitioner would be for
> the IJ to fax the order with the new date, time and location from the
> Chicago Immigration Court where she was located to the [East Jefferson
> Street location] where the INS agent could have handed it to the
> Petitioner. Certainly in 1995, the INS government office located at the
> [East Jefferson Street location] would surely have had a fax machine.

Appellant Br. 8-9. However, Camaj supplied no evidence establishing these facts, even
though he bore the burden of doing so.[3] *See Scorteanu v. INS*, 339 F.3d 407, 411 (6th
Cir. 2003) ("[I]n seeking recision of an *in absentia* deportation order, the burden rests
on the movant to demonstrate . . . improper notice . . . .") (citation omitted). Rather, he
submitted only his sworn affidavit, a memorandum filed by the INS in 1996, a partial
transcript of the April 27 hearing, and a map given to him by INS agents directing him
to the proper location of the September 25 hearing. J.A. 112-15. None of this evidence
describes the personnel or technology present at the East Jefferson Street location.
Moreover, during the evidentiary hearing, the IJ inquired into the basis for Camaj's
assertions regarding available personnel, but found his explanations unconvincing. *See*

---

[3]Camaj now contends that Customs and Border Protection Agent Harold Carter and U.S.
Citizenship and Immigration Services District Adjudications Officer Gregory Gellert could have testified
regarding the personnel present at the East Jefferson Street location. Appellant Br. 9. However, no record
evidence substantiates this claim, and unsupported assertions of counsel are not evidence. *See Duha v.
Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence.")
(citations omitted).

J.A. 81-85. The IJ consequently relied upon Dobson's uncontroverted affidavit to find in-person service of notice upon Camaj impracticable. J.A. 13-14. Given the dearth of evidence supporting Camaj's claim, the IJ's finding did not constitute an abuse of discretion. The court therefore finds that the service of notice upon Camaj's counsel by certified mail fulfilled the notice requirement of § 1252b(a)(2).

**B. Mere Tardiness as a Failure to Appear**

Camaj alternatively raises the compelling argument that the IJ abused her discretion when she ordered him deported *in absentia* for failing to appear because he arrived only 40 minutes late to his hearing – and only six minutes after she had entered the order against him. In other words, he asserts that mere tardiness does not amount to a failure to appear under 8 U.S.C. § 1229a(b)(5)(A). Appellant Br. 10. Unfortunately, Camaj presents this argument for the first time on appeal, and Congress has stripped the Federal courts of subject matter jurisdiction to entertain administratively unexhausted deportation claims, no matter how meritorious. 8 U.S.C. § 1252(d)(1); *accord Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994).

As a final note, we feel that we must stress that our current legislative, administrative, and judicial procedures have combined to deprive a fellow human being of his day in the courts of our country. It is true that there is no showing on the record that Camaj would have been entitled to the political asylum he sought. That is of no moment. The facts of this case should have entitled him to have his case heard on the merits.

When a similar case again comes before this Court – as one surely will – we would implore our colleagues to hold that slight tardiness to one's hearing does not qualify as a failure to appear at an immigration proceeding and that to order an individual's deportation under such circumstances constitutes an abuse of discretion.[4]

---

[4]We acknowledge that we could not resolve the issue in this case due to an unfortunate conjunction of inadequate lawyering below and the statute's absolute requirement for the exhaustion of administrative remedies. We submit that these two factors, recurring as they do in so many of these cases, contribute to the chaotic and inequitable landscape.

This simple clarification would preclude the miscarriage of justice that Camaj today must endure and would make it less likely that this Court will have its docket congested with similar cases in the future.

Our sister circuits have followed a similar path to facilitate the administration of justice. The Ninth and Second Circuits have held that an immigration judge abuses his discretion when he treats mere tardiness as a failure to appear. *See, e.g.*, *Perez v. Mukasey*, 516 F.3d 770, 774-75 (9th Cir. 2008); *Abu Hasirah v. Dep't of Homeland Sec.*, 478 F.3d 474, 479 (2d Cir. 2007). Similarly, the Third Circuit has held that

> [w]hen the delay is as short as it was here [(15 to 20 minutes)], there have been no prior instances of tardiness, and the IJ is either still on the bench or recently retired and close by, it is a due process violation to treat the tardiness as a failure to appear. It is accepted practice for Article III judges to give marginally tardy litigants a second chance, because [i]t is both harsh and unrealistic to treat as a non-appearance a litigant's failure to be in the courtroom at the precise moment his case is called. We expect nothing less from immigration judges who sit in this circuit, given the severity of the consequences of removal and the minimal disruption to the operations of the Immigration Court. We agree with the Fifth Circuit that judges must "remember that they are appointed, not anointed."

*Cabrera-Perez v. Gonzales*, 456 F.3d 109, 116-17 (3d Cir. 2006) (per curiam) (third brackets in original) (citations & quotation marks omitted). Likewise, the Fifth Circuit has opined that

> [w]hen . . . (1) there is no failure but only a slight tardiness, (2) the IJ is either still on the bench or recently retired and still close by, and (3) the time of the immigrant's delayed arrival is still during "business hours," it is an abuse of discretion – if not worse – to treat such slight tardiness as a non-appearance. Given the severity of the consequence, the minimal procedural interference, and the serious claim for relief from deportation via asylum, the refusal of the IJ to step back across the hall and into the hearing room to consider Petitioner's case is unacceptable. The applicable statute does not encompass such a draconian result from a momentary *de minimis* delay.

*Alarcon-Chavez v. Gonzales*, 403 F.3d 343, 346 (5th Cir. 2005) (footnotes & quotation marks omitted). As the First Circuit has noted, Congress likely did not intend to apply

severe consequences, like deportation, to litigants who are innocently and understandably tardy. *See Herbert v. Ashcroft*, 325 F.3d 68, 71-72 (1st Cir. 2003). That Circuit persuasively explained that the legislative history underlying the applicable statutes reveals that they "were adopted in response to a serious problem: some aliens deliberately did not appear for hearings and thus effectively extended their stay in this country. This tactic imposed considerable costs on the INS and disrupted its efforts to promptly schedule and hear requests for discretionary relief from removal." *Id.* at 71; *see also* H.R. Rep. No. 101-681(I), at 160 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6556-57. In keeping with our country's historical struggle to ensure that all persons are treated with dignity and due process under law, Congress surely never contemplated that these provisions would apply to someone like Camaj.

### III.

Nevertheless, we are constrained and must affirm the Board's decision and deny Camaj's petition for review.