**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1856**

DIALUNGANA NKANUAMBOTE SALOMAO; VANILSON MANDELA SALOMAO,

Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of Orders of the Board of Immigration Appeals.

Argued: January 25, 2022                    Decided: May 2, 2022

Before GREGORY, Chief Judge, THACKER, Circuit Judge, and FLOYD, Senior Circuit Judge.

Petition for review granted; vacated and remanded by unpublished opinion. Chief Judge Gregory wrote the opinion, in which Judge Thacker and Judge Floyd joined.

**ARGUED:** Helen Parsonage, ELLIOT MORGAN PARSONAGE, Winston-Salem, North Carolina, for Petitioners. Aric Allan Anderson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Japheth N. Matemu, MATEMU LAW OFFICE P.C., Raleigh, North Carolina, for Petitioners. Jeffrey Bossert Clark, Acting Assistant Attorney General, Emily Anne Radford, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

GREGORY, Chief Judge:

This case arises out of an in absentia order against two Petitioners who allege to have arrived one hour and five minutes late to their individual hearing scheduled for several hours. Neither the immigration judge ("IJ") nor the Board of Immigration Appeals ("BIA") addressed this argument. For the reasons that follow, we find that the BIA abused its discretion when it made no mention of the alleged late arrival in its decision to dismiss the motion to reopen proceedings on appeal. Thus, we reverse and vacate the BIA's order and remand for further proceedings consistent with this opinion.

## I.

Petitioner Dialungana Nkanuambote Salomao ("Dialungana") and his adult son, Vanilson Mansueki Mandela Salomao ("Vanilson") (together, "Petitioners"), are Angolan citizens and members of the Bakongo ethnic group. A.R. 149–50. The Bakongo people— located in Angola, the Republic of Congo, and the Democratic Republic of Congo ("DRC")—have historical ties to a certain political ideology that Petitioners have claimed caused them to be discriminated against. A.R. 102–03; s*ee* A.R. 110–14, 118–26, 253–55. Dialungana was a member of the Angolan military between 1989-2011 and claims to have fled Angola after being labeled a traitor for refusing to follow orders to participate in a military coup in Kinshasa, DRC. A.R. 168–169. Because of this, Dialungana argues that his and his son's life would be in danger should they return to Angola. A.R. 169.

In August 2013, Petitioners fraudulently entered the United States through the Visa Waiver Program ("VWP"). A.R. 906, 925; *see* A.R. 169. In July 2014, Dialungana filed

2

for asylum and named Vanilson as a derivative asylum applicant. A.R. 733–41. The Department of Homeland Security ("DHS") referred Petitioners to an IJ for asylum-only proceedings. A.R. 906–08, 925–27. Petitioners' individual hearing was scheduled for September 14, 2017,[1] but was later rescheduled for March 26, 2018, due to several continuances. A.R. 85–86, 93–96. The hearing was set to start at 10:00 a.m. Petitioners' counsel received the hearing notice and sent it to Petitioners on August 8, 2017. A.R. 51, 57.

At the end of the business day on the Friday preceding the hearing, Petitioners received a voicemail reminder from their counsel's firm. A.R. 57. Dialungana submitted an affidavit claiming he was unable to access his voicemail or to reach the firm until the Monday morning of his hearing. A paralegal from the firm—Courtney Desiree' Schell— declared in an affidavit that she overheard a phone conversation between Dialungana and another paralegal that Monday morning, during which Dialungana learned that his hearing began in one hour. She noted that Dialungana sounded confused and stated that he was "over two hours away" from court. A.R. 62. According to Dialungana's affidavit, he then immediately left work and collected Vanilson from school on his way to court. A.R. 57. Dialungana's counsel was present for the 10:00 a.m. hearing, and when he called Dialungana to ask where Petitioners were, Dialungana falsely told him that he had a flat tire but was on the way. A.R. 57–58. Petitioners' counsel relayed this explanation to the IJ. A.R. 29. Although the record is silent as to what time this transpired, it is clear it

---

[1] According to Petitioners, a change in counsel led to three continuances before this September 2017 hearing date was set. A.R. 11.

3

occurred after the hearing began at 10:00 a.m.  The IJ then entered an in absentia order, denying Petitioners' applications as abandoned.  A.R. 83–84, 919–20.  According to an attorney who worked with Petitioners' counsel and was at the court that day—Susan Waller Ramos—Petitioners arrived at 11:05 a.m.  A.R. 61.

On September 19, 2018, Petitioners filed a motion to reopen the proceedings.  A.R. 45–55.  Petitioners argued that they arrived late and therefore did not fail to appear.  A.R. 52.  Supporting documents submitted to the IJ included:  (1) Dialungana's affidavit admitting that his flat tire explanation was false;[2] (2) Ramos's affidavit stating that she witnessed Petitioners arrive at 11:05 a.m.; and (3) Schell's affidavit explaining that Dialungana called the firm one hour before his hearing.  A.R. 57–63.  Petitioners' primary argument, however, was that Dialungana's ongoing health issues prevented their timely appearance and constituted exceptional circumstances.  A.R. 52–53.  In support, Petitioners submitted a three-page medical document from Dialungana's visit with a neurologist on May 11, 2018, addressing "[m]emory loss; PTSD (post-traumatic stress disorder); and Depression, unspecified depression type."  A.R. 64–66.  Other documents submitted included a prescription, as well as articles reflecting research that Petitioners claimed tied Dialungana's medication to memory loss.  A.R. 66; *see* A.R. 67–82.

---

[2] Dialungana said, "I completely forgot my court hearing on March 26, 2018[,] since it had been months since I had received notice . . . and the notice was in a language other than Portuguese."  A.R. 57.  Once his attorney called to ask where Petitioners were, Dialungana "[a]bsolutely panicked" and stated, "I said the first thing I thought of, that we had a flat tire, that seemed logical.  The truth was that I had completely forgot[ten] and was desperately trying to get to court."  A.R. 58.

Unconvinced, the IJ found that Petitioners failed to establish exceptional circumstances and denied their motion on May 8, 2019. A.R. 36–38. Not only did Petitioners fail to submit proof of a definitive diagnosis, but Dialungana's admission that he lied to his counsel—and by consequence the IJ—about having a flat tire led the IJ to doubt his credibility and "self-serving affidavit, or information documented by medical personnel based upon his statements made to them" after he was denied relief. A.R. 30.[3] The IJ also found, in the alternative, that Petitioners failed to show prima facie eligibility for relief on the merits of their asylum or withholding of removal claims. A.R. 30. On appeal, the BIA agreed with the IJ's exceptional circumstances determination and found no clear error with the IJ's credibility assessment. A.R. 3–5. Without reaching the IJ's finding concerning Petitioners' underlying claims, the BIA dismissed the appeal on July 10, 2020.[4] This timely appeal followed.

## II.

We must first determine whether this Court has jurisdiction to consider the petition for review. Petitioners entered the United States using fraudulent passports from a VWP

---

[3] The IJ relied on the transcript and record of proceedings in his decision. A.R. 29. These transcripts were not included in the Administrative Record as Petitioners failed to request them.

[4] On December 23, 2020, DHS served Petitioners with removal orders. While these orders were not included in the Administrative Record, the Government submitted them in its motion to take judicial notice. Appellee's Mot. to Take Judicial Notice, Ex. A (filed Jan. 6, 2021).

country.[5]  Participants in the VWP are permitted to visit the United States for up to ninety days without a visa.  8 U.S.C. § 1187(a)(1).  In exchange, participants forfeit the right "to contest, other than on the basis of an application for asylum, any action for removal of the alien."  8 U.S.C. § 1187(b); *see* 8 C.F.R. § 217.4(a)–(b) (2006).  Therefore, a VWP participant who applies for asylum will engage in an asylum-only proceeding.[6]  Because this is the sole relief available to a VWP participant, a denial of such relief signals that the participant may be removed by DHS without further proceedings.  8 C.F.R. §§ 208.2(c)(3)(i), 1208.2(c)(3)(i).  Once the IJ and BIA have denied relief in a VWP asylum-only proceeding, DHS will enter a final order of removal.  This step is exclusive to DHS as the IJ and BIA determine relief and are unauthorized to enter final orders of removal in VWP asylum-only proceedings.

This Court's jurisdiction, however, is limited to "final order[s] of removal."  8 U.S.C. § 1252(a)(1).  We must therefore determine whether denying a VWP participant's relief in

---

[5] Whether an applicant who fraudulently presents themself as a VWP participant is subject to the legal boundaries governing the VWP was not discussed below.  The Second, Seventh, Eighth, and Ninth Circuits have found VWP limitations apply to fraudulent participants. *See Riera-Riera v. Lynch*, 841 F.3d 1077, 1080 (9th Cir. 2016) (citing *Matter of Kanagasundram*, 22 I. & N. Dec. 963, 964 (BIA 1999)); *Shabaj v. Holder*, 602 F.3d 103, 105–06 (2d Cir. 2010); *Bayo v. Napolitano*, 593 F.3d 495, 501–02 (7th Cir. 2010) (en banc); *Zine v. Mukasey*, 517 F.3d 535, 542–43 (8th Cir. 2008).

[6] Applicants in asylum-only proceedings may only file claims of asylum, withholding of removal, and protection under the United Nations Convention Against Torture.  8 C.F.R. §§ 208.2(c)(3)(i), 1208.2(c)(3)(i).  This is what Petitioners did here. A.R. 906–08, 925–34.

an asylum-only proceeding functions like a final order of removal for the purposes of our jurisdiction. At oral argument, both parties argued that it does.[7]

At least five of our sister circuits have established jurisdiction in cases involving asylum-only proceedings. *See, e.g.*, *Tai Nian v. Holder*, 683 F.3d 1227, 1229–30 (9th Cir. 2012) (exercising jurisdiction because a denial of relief in an asylum-only proceeding functions as a final order of removal); *Mitondo v. Mukasey*, 523 F.3d 784, 787 (7th Cir. 2008) (establishing jurisdiction because "an order that is proper only if the alien is removable implies an order of removal"); *Shehu v. Att'y Gen.*, 482 F.3d 652, 656 (3d Cir. 2007) (finding jurisdiction over asylum-only proceedings because the noncitizen "is entitled to no further process before deportation"); *Kanacevic v. INS*, 448 F.3d 129, 134–35 (2d Cir. 2006) (finding jurisdiction in a VWP case although it did not "occur in the context of removal proceedings"); *Nreka v. United States Attorney Gen.*, 408 F.3d 1361, 1367 (11th Cir. 2005) (explaining that the denial of relief in a VWP case equates to a final order of removal).

In considering the same jurisdictional question, the Second Circuit concluded, "[a]lthough the denial of asylum in a [VWP] case does not occur in the context of removal

---

[7] Prior to oral argument, the Government asked this Court to take judicial notice of the removal orders, entered by DHS, when considering its jurisdiction. Appellee's Mot. to Take Judicial Notice (filed Jan. 6, 2021). At oral argument however, the Government's counsel clarified that this was only recommended and not necessary to establishing jurisdiction because, "[i]t is the Attorney General's position that the referral to the [IJ] would not have occurred unless DHS had already concluded that Petitioners were removable under the VWP program." Oral Argument at 2:06:52, *Salomao v. Garland* (4th Cir. Jan. 25, 2022) (No. 20-1856), https://www.ca4.uscourts.gov/OAarchive/mp3/20-1856-20220125.mp3.

7

proceedings, denial of the asylum application is the functional equivalent of a removal order under the provisions of the [VWP]." *Kanacevic*, 448 F.3d at 134. It also recognized that finding otherwise "would create uncertainty over exactly what procedure a [VWP] applicant could pursue in order to obtain review of his or her asylum proceedings." *Id.* at 135. Due to the structure of the VWP, the only remaining action to be taken following a denial of relief in an asylum-only proceeding is the removal itself. This is confirmed by the case at bar as DHS entered the orders of removal after both the IJ and BIA denied the motion to reopen. Accordingly, we agree that a denial of relief in an asylum-only proceeding "is the functional equivalent of a removal order" and therefore hold that this Court has jurisdiction over the petition to review. *Id.* at 134.

III.

Our review is limited to the BIA's decision when the BIA offers its own reasoning as opposed to adopting the IJ's decision. *Cabrera v. Garland*, 21 F.4th 878, 883 (4th Cir. 2022); *see Wambura v. Barr*, 980 F.3d 365, 368 n.2 (4th Cir. 2020) (reviewing the BIA's decision because it "issued its own detailed opinion affirming the IJ with additional reasoning of its own but without expressly adopting the IJ's opinion"). However, when the BIA incorporates part of the IJ's opinion, in addition to its own reasoning, we review both decisions. *Sanchez v. Sessions*, 885 F.3d 782, 786 n.2 (4th Cir. 2018). We focus our review here on the BIA's decision because it largely agreed with the IJ and only review the IJ's decision to the extent that the BIA affirmed it.

8

A.

Turning to the main issue before us, we review denials of motions to reopen for abuse of discretion. *Wanrong Lin v. Holder*, 771 F.3d 177, 182 (4th Cir. 2014) (citing *INS v. Doherty*, 502 U.S. 314, 323–24 (1992)). The BIA's decision is evaluated "with extreme deference, given that motions to reopen are disfavored because every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Massis v. Mukasey*, 549 F.3d 631, 636 (4th Cir. 2008); *see Doherty*, 502 U.S. at 323. Nevertheless, the BIA's discretion is not without limit as the very "purpose of a motion to reopen is to ensure a proper and lawful disposition." *Dada v. Mukasey*, 554 U.S. 1, 18 (2008) (describing this purpose as an "important safeguard"). The BIA abuses its discretion by denying a motion to reopen "only if it acted arbitrarily, irrationally, or contrary to law." *Prasad v. Holder*, 776 F.3d 222, 225 (4th Cir. 2015). "[W]e will reverse the [BIA] if it fails to offer a reasoned explanation for its decision, or if it distorts or disregards important aspects of an applicant's claim." *Lawrence v. Lynch*, 826 F.3d 198, 203 (4th Cir. 2016).

As provided by the Immigration and Nationality Act ("INA"), an applicant who "does not attend" a removal hearing "shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable [as defined by statute]." 8 U.S.C. § 1229a(b)(5)(A). Under the plain meaning of this section of the statute, titled "Consequences of failure to appear," a failure to appear undoubtedly precludes an applicant from presenting her argument on the merits. *Id.* Concluding that an applicant failed to appear effectively closes

the door on any further relief from removal absent a successful motion to reopen. Congress's instruction to apply this severe consequence once an applicant has failed to appear indicates that § 1229a(b)(5) may not be intended for applicants who arrived late. *See Abu Hasirah v. Dep't of Homeland Sec.*, 478 F.3d 474, 478 (2d Cir. 2007) (per curiam) (finding that this consequence was intended for applicants "who failed entirely to appear for a hearing"); *Herbert v. Ashcroft*, 325 F.3d 68, 71 (1st Cir. 2003) (explaining that these provisions were adopted in response to applicants who intentionally did not to appear for hearings to extend their stay); *see also* H.R. Rep. No. 101-681, at 160 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6556–57 (finding that "willful and unjustifiable failure to attend deportation hearings that have been properly noticed is intolerable"). Indeed, several Courts of Appeals have adopted a more careful approach when applying § 1229a(b)(5) and distinguished a late arrival from a failure to appear.

Once a removal order has been entered in absentia, it may only be rescinded upon the applicant's motion showing: (1) her failure to appear was due to exceptional circumstances as defined by the statute; (2) a failure to provide notice as mandated by the statute; or (3) that she was in Federal or State custody and her failure to appear was through no fault of her own. 8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. § 1003.23(b)(4)(ii); 8 C.F.R. § 1208.2(c)(3)(ii). Exceptional circumstances are defined as circumstances beyond the applicant's control, "such as battery or extreme cruelty" of the applicant, or "serious illness or death" of the applicant's child, spouse, or parent. 8 U.S.C. § 1229a(e)(1). When determining whether exceptional circumstances exist, an IJ will look to the totality of the

circumstances. *See E.A.C.A. v. Rosen*, 985 F.3d 499, 504 (6th Cir. 2021); *Matter of W-F-*, 21 I. & N. Dec. 503, 509 (BIA 1996).

B.

1.

Petitioners argue that they need not establish exceptional circumstances because tardiness does not constitute a failure to appear under the plain meaning of the statute. Appellant's Br. at 15–16.[8] In response, the Government argues that Petitioners did not exhaust this claim because they failed to raise it before the BIA. Appellee's Br. at 21–22. We disagree with the Government and find that Petitioners satisfied the exhaustion requirement when they sufficiently raised the issue below.

Federal courts are permitted to review final orders of removal "only if" the noncitizen exhausted "all administrative remedies available." 8 U.S.C. § 1252(d)(1). Because the statute does not define exhaustion, we look to our precedent for clarification. "The exhaustion requirement bars consideration of *general issues* that were not raised below, and appellants should *not be penalized* by evaluating form over substance where their arguments before the Board in essence raised the claim at issue." *Perez Vasquez v. Garland*, 4 F.4th 213, 228 (4th Cir. 2021) (citation and internal quotation marks omitted)

---

[8] Petitioners' counsel on brief was suspended. *See Matter of Matemu*, 195 A.D.3d 1368, 148 N.Y.S.3d 300 (2021), <u>reinstatement granted,</u> No. PM-64-22, 2022 WL 967499 (N.Y. App. Div. Mar. 31, 2022). Petitioners retained new counsel for oral argument, and she abandoned two claims included in the brief: (1) regarding oral notice; and (2) concerning the merits of Petitioners' asylum claim. Oral Argument at 1:50:00, *Salomao v. Garland* (4th Cir. Jan. 25, 2022) (No. 20-1856), https://www.ca4.uscourts.gov/OAarchive/mp3/20-1856-20220125.mp3.

(emphases in original). Accordingly, a petitioner is not required to "conjure any magic words," but simply raise the appropriate argument. *Atemnkeng v. Barr*, 948 F.3d 231, 240 (4th Cir. 2020) (internal quotation marks omitted).

In their motion to reopen, Petitioners claimed that they were not required to demonstrate exceptional circumstances. Specifically, they argued that the statute only applies to applicants who fail to appear, and not to those who arrive late.[9] Petitioners also presented an argument that Dialungana's health issues demonstrated exceptional circumstances excusing their late arrival. The Government concedes that Petitioners argued that they were not required to demonstrate exceptional circumstances in their brief to the IJ. Appellee's Br. at 21. But in its view, Petitioners altered this argument on appeal before the BIA and instead claimed that their late appearance was merely a factor demonstrating exceptional circumstances.

The Government is incorrect that Petitioners abandoned this argument on appeal before the BIA. Importantly, the IJ's decision focused on the exceptional circumstances finding and ignored Petitioners' initial late arrival argument altogether. On appeal before the BIA, Petitioners responded that they had demonstrated exceptional circumstances and

---

[9] Petitioners stated,

> As an initial observation, INA § 240(b)(5), which addresses in absentia removal orders, is specifically entitled "Consequences of Failure to Appear." [Petitioners] did not fail to appear; as evidenced by attached sworn statements and the submission of this verified motion, [Petitioners] were late but did not fail to appear. Per the plain meaning of the statute, [Petitioners] should not suffer the "consequences of a failure to appear."

A.R. 52.

12

still maintained their initial argument that they never failed to appear. Indeed, they argued, "[m]ost importantly, [Petitioners] were tardy but did, in fact, appear." A.R. 14. Because the statute at issue precludes applicants who have failed to appear from merits review, Petitioners' argument that they did in fact appear necessarily implies that the statute does not prohibit them from arguing their asylum claims on the merits. Recently, we found in *Perez Vasquez* that a petitioner failed to exhaust administrative remedies when she did not present any arguments supporting her Convention Against Torture claim in her briefs before the IJ or the BIA. 4 F.4th at 228. There, petitioner did not so much as mention the word torture. *Id.* This differs from the case at bar where the statute applies to applicants who failed to appear, and Petitioners argued that they did in fact appear. Unlike the petitioner in *Perez Vasquez*, Petitioners discussed this point in both their brief to the IJ and the BIA.

2.

Now turning to Petitioners' motion to reopen proceedings, we note that some of our sister circuits have found that a late arrival does not necessarily constitute a failure to appear.[10] *See, e.g.*, *Perez v. Mukasey*, 516 F.3d 770, 775 (9th Cir. 2008) (holding "that a petitioner who arrives late for his immigration hearing, but while the IJ is still in the courtroom, has not failed to appear" and is not required to show exceptional circumstances to reopen proceedings); *Abu Hasirah*, 478 F.3d at 479 (finding the applicant did not fail to

---

[10] This is an issue of first impression. It has been raised in this Circuit once before, but we did not address it. *Gemeda v. Ashcroft*, 102 F. App'x. 837, 838 (4th Cir. 2004) (per curiam).

13

appear because he was fifteen minutes late as corroborated by the court log-in sheet); *Cabrera-Perez v. Gonzales*, 456 F.3d 109, 116 (3d Cir. 2006) ("When the delay is as short as it was here [fifteen to twenty minutes], there have been no prior instances of tardiness, and the IJ is either still on the bench or recently retired and close by, it is a due process violation to treat the tardiness as a failure to appear."); *Alarcon-Chavez v. Gonzales*, 403 F.3d 343, 346 (5th Cir. 2005) (holding that when "(1) there is no failure but only a slight tardiness, (2) the IJ is either still on bench or recently retired and still close by, and (3) the time of the immigrant's delayed arrival is still during business hours, it is an abuse of discretion-if not worse-to treat such slight tardiness as a non-appearance." (internal quotation marks omitted)). While it is clear that the statute only applies in instances where an applicant has failed to appear, whether an applicant's late arrival constitutes a failure to appear is a question of fact that must be determined by the immigration court.

Still, the Government insists that Petitioners' tardiness is distinguishable from those of the petitioners in the abovementioned cases because they lack evidence of key factors relied upon by other circuits. Appellee's Br. at 22. Two of the most important factors relied upon by our sister circuits include the extent of the lateness and whether the IJ was still on the bench or close by. For example, the Ninth Circuit has placed "particular emphasis on whether the IJ was still in the courtroom when the petitioner arrived at the courthouse" and has granted petitions for review of the merits in instances where a petitioner was up to two hours late. *Perez*, 516 F.3d at 774–75; *see Jerezano v. INS*, 169 F.3d 613, 615 (9th Cir. 1999) (finding that an applicant who arrived between fifteen and twenty minutes late did not fail to appear when the IJ was still hearing cases). This

14

emphasis has also led the Ninth Circuit to decline to reopen proceedings. *Valencia-Fragoso v. INS*, 321 F.3d 1204, 1205–06 (9th Cir. 2003) (per curiam) (denying the petition when the applicant arrived four and one-half hours late and failed to show the IJ was still on the bench). *But cf. Alarcon-Chavez*, 403 F.3d at 346 n.9 (finding no significance with whether the IJ was on the bench because "a man's fate should not turn on whether he had the good fortune of other hearings being scheduled to begin subsequent to his own").

Similarly, the Second and Fifth Circuits have both found that a refusal to reopen proceedings due to a fifteen to twenty-minute late arrival constitutes an abuse of discretion. *See Abu Hasirah*, 478 F.3d at 478 (finding that "brief, innocent lateness does not constitute a failure to appear within the meaning of 8 U.S.C. § 1229a"); *Alarcon-Chavez*, 403 F.3d at 345–46) (granting the petition when the applicant arrived twenty minutes late, but still during business hours, and only five minutes after the IJ entered the order and left). In doing so, the Fifth Circuit balanced the "severity of the consequence" against the "minimal procedural interference, and the serious claim for relief from deportation," to find that the IJ's refusal to return to the courtroom from across the hall was unacceptable, reminding judges "that they are appointed, not anointed." *Alarcon-Chavez*, 403 F.3d at 346 ("The applicable statute does not encompass such a draconian result from a momentary *de minimis* delay."). Echoing this sentiment, the Third Circuit compared the expectation of immigration judges to that of Article III judges for whom "[i]t is accepted practice . . . to give marginally tardy litigants a second chance." *Cabrera-Perez*, 456 F.3d at 116. Although it ultimately denied a petition for a failure to exhaust, the Sixth Circuit agreed with both the Third and Fifth Circuits that "Congress likely did not intend to apply severe

15

consequences, like deportation, to litigants who are innocently and understandably tardy." *Camaj v. Holder*, 625 F.3d 988, 992–92 (6th Cir. 2010).

The Seventh Circuit has gone as far as to find that a late arrival may demonstrate exceptional circumstances, or that declining to reopen a proceeding because of a late arrival may constitute a due process violation. *Nazarova v. INS*, 171 F.3d 478, 848 (7th Cir. 1999) (holding that if a refusal to reopen a non-English speaking applicant's proceeding— because she arrived two hours late after waiting for her interpreter—does not constitute exceptional circumstances, then it is a due process violation). Even the BIA looks to certain factors, such as whether the applicant informed the court of his or her status, in its exceptional circumstances determination. *Matter of J-P-*, 22 I. & N. Dec. 33, 36 (BIA 1998) (noting that the applicant's "lack of diligence" to inform the court that he could not attend the hearing went against his claim of exceptional circumstances when considering the totality of the circumstances).

Despite the distinction circuit courts have made between a late arrival and a failure to appear, the Government maintains that Petitioners' skeletal record fails to give any indication that such a distinction is appropriate here. To be sure, the record does not identify the time Petitioners' counsel informed the IJ that they were on their way, the time the IJ entered the order, or whether the IJ was even alerted and near the bench when Petitioners arrived. However, the record is not devoid of supporting evidence. Petitioners submitted: (1) the Ramos affidavit stating that Petitioners arrived at 11:05 a.m.; and (2) the Schell affidavit declaring that Dialungana was again reminded of the hearing one hour before it began and stated that he was over two hours away from the courthouse. A.R. 61–63. By

16

comparing Petitioners' case to *Valencia-Fragoso*—where the court denied the petition due to a "four and one-half hour tardy appearance, coupled with a lack of *any* showing that the IJ was still on the bench hearing cases"—the Government emphasizes the absence of evidence in this record. 321 F.3d at 1205 (emphasis added); Appellee's Br. at 22.

At oral argument however, counsel for the Government informed this Court that the hearing at issue "was not a mass hearing where you had an IJ with 30 cases before him that he was going to go through one after the other," rather "this was [Petitioners'] merits hearing—it was set aside as *several hours* on the schedule of the IJ." Oral Argument at 2:12:48, *Salomao v. Garland* (4th Cir. Jan. 25, 2022) (No. 20-1856), https://www.ca4.uscourts.gov/OAarchive/mp3/20-1856-20220125.mp3. This new information alters the framework upon which we base our analysis and must therefore be put into context. First, Petitioners filed for asylum on July 31, 2014, but have never argued the merits of their case before an IJ. *See* A.R. 11, 85–86, 93–96. Second, it is undisputed that Petitioners' counsel was present at the morning hearing. A.R. 29. Third, it has been established that Petitioners alerted their counsel they were on their way but had a flat tire, and that this information was relayed to the IJ. *Id.* Fourth, after receiving notice that Petitioners were late, but on their way, to attend a hearing for which the IJ had reserved several hours, the IJ entered the in absentia order. A.R. 11, 83–84, 919–20. And fifth, Petitioners allegedly arrived at 11:05 a.m. and learned the order had been entered. A.R. 58, 61.

While the IJ is certainly not required to remain on the bench and await an applicant's arrival, as previously discussed, some of our sister circuits look to see whether the IJ was

17

still on the bench or nearby when the applicant arrived. Evidence that Petitioners arrived one hour and five minutes late, coupled with the fact that the hearing was scheduled for several hours, at the very least demonstrates that even if the IJ was not on the bench at 11:05 a.m., he had planned to be, having reserved this time for the sole purpose of hearing Petitioners' case on the merits. *See Perez*, 516 F.3d at 774–75; *Alarcon-Chavez*, 403 F.3d at 346. This fact further distinguishes the case at bar from *Valencia-Fragoso*, where the court found there was no showing that the IJ was still on the bench. 321 F.3d at 1205. In addition, Petitioners' alleged tardy arrival of one hour and five minutes falls within the time frame that some circuits have categorized as a late arrival rather than a failure to appear. *See Perez*, 516 F.3d at 774–75. Whether Petitioners did in fact appear at that time, and if so, whether this constituted a failure to appear as delineated by statute is a factual determination to be considered and decided, in the first instance by the BIA.

The Government, however, also points to the negative credibility determination. Appellee's Br. at 24. But the BIA's review of the IJ's credibility determination does not explain its failure to address Petitioners' tardy arrival. In its consideration of Petitioners' motion, the IJ noted,

> Given [Dialungana's] admission that he lied to his counsel about having a flat tire on the way to the hearing, the Court is not persuaded as to the veracity of his self-serving affidavit, or information documented by medical personnel based upon [Dialungana's] statements made to them after the consequences of his failure to appear in court were understood.

A.R. 30. This finding was thus made with respect to Dialungana's affidavit—explaining that he had forgotten about the hearing—as well as the medical documents submitted with his motion. On appeal, the BIA found no clear error with the IJ's determination that

18

Dialungana's admission "that he lied to the [IJ] regarding the reason for his lack of presence at the hearing renders his new assertion that he was not present because of a mental disorder highly suspect, and insufficiently credible to establish that an exceptional circumstance was present." A.R. 4.

This Court "defer[s] to credibility findings that are supported by substantial evidence." *Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004) (explaining that credibility findings should include "a specific, cogent reason for [the trier of fact's] disbelief"). But here, the IJ provided no details as to the basis upon which he found Petitioners' flat tire explanation to lack credibility prior to Dialungana's own admission. While the BIA generally defers to the IJ's credibility assessment because the IJ is the decisionmaker who has observed the applicant in the first instance, the IJ here only heard Petitioners' flat tire story as told by their counsel. *See Rusu v. United States INS*, 296 F.3d 316, 322–23 (4th Cir. 2002). It was only after the fact, once Dialungana himself admitted his lie, that the IJ explained his reasons for doubting Petitioners' affidavit and medical claim.[11] The IJ also made no mention as to how this assessment impacted the reliability of the Ramos affidavit. A.R. 61 ("I was in the café on the first floor of [the courthouse] when Mr. Salomao and his son arrived 11:05 a.m."). While the IJ may exercise discretion in

---

[11] When asked why the IJ doubted Petitioners' flat tire story, counsel for the Government responded, "because people lie." Oral Argument at 2:17:44, *Salomao v. Garland* (4th Cir. Jan. 25, 2022) (No. 20-1856), https://www.ca4.uscourts.gov/OAarchive/mp3/20-1856-20220125.mp3. This explanation is of course insufficient to support a negative credibility finding because as we have established, "[a]n individual's status as an alien, legal or otherwise, however, does not entitle the [BIA] to brand him a liar." *Figeroa*, 886 F.2d at 79.

assessing credibility, the IJ is still required to have a legitimate basis supporting such conclusions. *See Figeroa v. United States INS*, 886 F.2d 76, 78–79 (4th Cir. 1989) (rejecting the credibility assessment because "the BIA offered no reason whatsoever for disbelieving Figeroa" and the applicant's story was not "inherently incredible"). The BIA's decision brings no clarity here as it found "no clear error" with the IJ's reasoning. A.R. 4. Because neither the IJ, nor the BIA, provided analysis on this point, we find that the credibility assessment lacks any semblance of supporting evidence explaining why the IJ doubted Petitioners' flat tire story.

Because Petitioners' alleged late arrival has yet to be addressed, we hold that the BIA acted arbitrarily and capriciously when it dismissed Petitioners' appeal of the IJ's denial of their motion to reopen. *See Alarcon-Chavez*, 403 F.3d at 345–46. Aside from finding that Dialungana failed to explain why he lied to the IJ "regarding the reason for his tardiness," the BIA did not analyze Petitioners' alleged tardiness and the potential impact that it could have had on their motion. The BIA could not have relied upon the IJ's analysis to explain its silence, because the IJ's decision is also devoid of any reasoning on this point. Although there is no statutory requirement obliging the IJ to wait for a tardy applicant, there certainly is a constitutional right entitling an applicant "to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).[12] In light of the

---

[12] Indeed, the very statute outlining the conditions under which an immigration court may consider a motion to reopen, once an applicant has failed to appear, "is grounded in due process considerations" intrinsically protecting the right to be heard. *Kaweesa*, 450 F.3d at 69–70 (noting that "one reason the [IJ] must consider the totality of the circumstances in deciding the validity of a claim of exceptional circumstances is to ensure that an alien is not deprived of a meaningful opportunity to be heard").

number of circuit courts that have distinguished an applicant's late arrival from a failure to appear, as well as the BIA's consideration of various factors in its totality of the circumstances analysis, the impact of Petitioners' alleged tardiness—one hour and five minutes late to a hearing scheduled for several hours—merits consideration.

IV.

For the foregoing reasons, we grant the petition for review. We vacate and remand with instructions to the BIA to consider Petitioners' motion to reopen. In doing so, the BIA should determine whether Petitioners arrived late, and if so, whether the surrounding circumstances show that this late arrival constitutes a failure to appear for the purposes of the statute's preclusive effect.

*PETITION FOR REVIEW GRANTED; VACATED AND REMANDED*